Sandra SLAVIN, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 90–2227.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1991.

Decided May 2, 1991.

Charles A. Cohen, Steven M. Crell, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, Ind., for petitioner-appellee.

Abraham N.M. Shashy, Jr., I.R.S., Gary R. Allen, David I. Pincus, Linda A. Mosakowski, Joan I. Oppenheimer, Dept. of Justice, Tax Div., Appellate Section, Charles S. Casazza, U.S. Tax Court, Shirley D. Peterson, Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellant.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1985 Harry A. Rider filed a petition in the Tax Court on behalf of Melvin A. Slavin and his wife Sandra. Rider represented that he was the Slavins' lawyer. The Slavins filed joint tax returns for 1977 and 1978; Rider's petition contested the Commissioner's determination that the Slavins owed another $340,000 in taxes, plus interest and penalties, for those years. Sandra was listed as a petitioner solely because the couple filed joint returns; she did not participate in the partnerships giving rise to the dispute. The Tax Court held a trial and rendered decision in favor of the Commissioner. T.C. Memo 1989-221.

■ Before the Tax Court entered its decision, Rider died. The Slavins' new lawyer sought to vacate the decision to the extent it bound Sandra, maintaining that she had not authorized Rider to represent her. Sandra filed an affidavit to this effect, adding that she had delegated all financial decisions to Melvin, who did not inform her about the dispute with the Internal Revenue Service or the initiation of litigation. Her affidavit added that she is chronically ill, and that her condition (myasthenia gravis) is aggravated by stress. At her physician's instructions, Melvin attempts to protect her from unpleasant news; he protected her completely from this tax dispute, Melvin's affidavit stated.

The day after receiving the motion and affidavits, the Tax Court vacated its decision. An opinion filed two months later, T.C. Memo 1990-44, accepted as true all of the asseverations in the affidavits. Because Sandra "knew nothing about the notice of deficiency or this litigation", and because she declined to ratify Rider's acts, the Tax Court concluded that it lacked jurisdiction over her. It then entered a decision fixing the tax obligations of Melvin alone. The Commissioner wants authority to collect from Sandra's assets as well as Melvin's. Because losing the benefit of a judgment is a real injury, the Commissioner is entitled to pursue this appeal even though the Tax Court's order does not prevent assessing a deficiency against Sandra and litigating in another court.

The Commissioner believes that the Tax Court should not have accepted the Slavins' affidavits without an evidentiary hearing. One potential obstacle is that the government never asked the Tax Court to hold a hearing. Tax Court Rule 50(b) appears to put the onus on the judge rather than the parties, however. Once the losing side files a post-decision motion, the Tax Court may proceed in one of three ways, at its discretion. Cf. *Whyte v. CIR*, 852 F.2d 306, 312–13 (7th Cir.1988). Here the Tax Court

immediately vacated its decision without giving the Commissioner time to respond, a course of action Rule 50(b) allows. The Slavins then asked for a hearing; the Commissioner supported this motion, which the court denied. After the court issued its opinion, the Commissioner's request for reconsideration (including a demand for an evidentiary hearing) was denied summarily. As the judge evidently was not interested in receiving evidence, we conclude that the Commissioner's failure to make a formal motion of his own is not pertinent.

Sandra contends that a hearing is unnecessary because the Slavins' affidavits establish that she did not authorize Rider to file a petition on her behalf. That is indeed what the affidavits say, but one party's say-so is not conclusive. Discovery and a hearing might expose deficiencies, even falsehoods, in the tale told by an affidavit. Rider's petition and appearance cut against the affidavits. Rider told the Tax Court that he represented both Slavins, and perhaps his files will contain some evidence to that effect. Melvin accepted Rider's services on behalf of both taxpayers in this case for four years; that, too, implies actual authority. On the other hand, Sandra can point to a power of attorney that she and Melvin signed in 1979. This document, authorizing Rider to represent them before any office of the IRS and to compromise claims for tax years 1975–78, does not mention authority to file a petition in the Tax Court. Sandra might argue that by negative implication Rider needed additional authority to start litigation. The Commissioner could reply that authority to settle disputes implies authority to litigate (and that if more authority were needed, Melvin supplied it). Inferences can go both ways, and more evidence may be available. The Tax Court should not have set aside its decision, rendered after the filing of a petition regular in form, without obtaining the evidence of both sides.

Especially not when the parties had just completed four years of hard-fought litigation. It is tempting for a plaintiff to seek another forum on discovering that he has lost. The temptation will be especially great in tax cases with joint returns, for the passive spouse is apt to have a plausible claim of ignorance. A cry of "never mind" from the loser should be viewed skeptically. Strong interests counsel against setting aside judgments. The arguments supporting the law of preclusion (res judicata and collateral estoppel) are no less apt here. Although it is no skin off the nose of the Tax Court if a petitioner moves elsewhere—its work is complete either way—the judicial system as a whole has an interest in holding down the number of times each dispute is litigated. If the Tax Court properly vacated its judgment, the next stop will be the Claims Court or a district court. Both of those courts, and the litigants waiting in their queues (including the Commissioner), will be injured by precipitate authorization to relitigate.

Although we need not decide the matter conclusively, we question whether Sandra is entitled to relief even if everything in the Slavins' affidavits should be established after an adversarial hearing. Let us assume that Sandra was ignorant of everything, from the deficiency notice to the filing of the petition to the trial and decision. Still, according to the affidavits Melvin expressly authorized Rider to file the petition. Did Melvin act as Sandra's agent when engaging Rider? Her affidavit says: "At all times during the course of my marriage to Melvin A. Slavin, I relinquished all authority to Melvin with respect to our tax and financial matters." That sounds like a delegation of authority that would allow Melvin to hire a lawyer to represent Sandra. See *Restatement (2d) of Agency* § 22 and comment. b (1957); *Lyons v. McDonald,* 501 N.E.2d 1079, 1082 (Ind.App. 3d Dist. 1986); *Moehlenkamp v. Shatz,* 396 N.E.2d 433 (Ind.App. 1st Dist.1979). The Tax Court did not discuss this possibility.

■■■ That the case turned out poorly for Sandra cannot matter. Her brief in this court maintains that Rider's failure to proffer an "innocent spouse" defense establishes his lack of authority. Who would engage a lawyer without assurance that he would make an available defense?, she asks. Whether Rider gave Sandra the *best* defense is neither here nor there. Authori-

ty to undertake the representation comes at the start of the case; few clients (certainly not a taxpayer in Sandra's position) say: "You may represent me, but only if you make the following arguments...." Deficiencies *ex post* do not detract from authority *ex ante*. No court should dismiss a case on the ground of "retroactive lack of authority" because counsel omitted an argument that would have been to the client's benefit—even an argument the client expressly instructed the lawyer to advance. Cf. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). There is no principle of effective assistance of counsel in civil cases. Shortcomings by counsel may be addressed in malpractice actions; they do not authorize the loser to litigate from scratch against the original adversary. *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Metropolitan Life Insurance Co. v. Cammon*, 929 F.2d 1220, 1224 (7th Cir.1991).

 Whether Melvin could engage Rider to represent Sandra may depend on the applicable body of law. Do the rules come from state law, or federal? The parties have not addressed this question. Normally the authority of an agent (a lawyer is just a specialized agent) derives from state law; that the substantive dispute concerns federal law does not matter. E.g., *Morgan v. South Bend Community School Corp.*, 797 F.2d 471 (7th Cir.1986). A federal statute, or a rule of the Tax Court, might require the application of federal law, but the parties have not pointed to an applicable statute. The Tax Court's Rules 24 and 60 require that the lawyer *be* authorized to represent the petitioner but do not govern how authority may be created.

If state law (here, Indiana's) supplies the rule of decision, it also supplies the burden of persuasion. *Palmer v. Hoffman*, 318 U.S. 109, 116–17, 63 S.Ct. 477, 481–82, 87 L.Ed. 645 (1943); *McEwen v. Delta Airlines, Inc.*, 919 F.2d 58, 59 (7th Cir.1990). If federal law supplies the rule of decision, then the burden is the preponderance of the evidence. See *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Commissioner's position that only "clear and convincing evidence" allows a court to find that a lawyer did not have authority to represent someone is based on unreasoned dicta in *Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 46 (4th Cir.1968). Burdens of persuasion allocate the risk of error. Federal courts use the preponderance standard, which apportions the risk equally between litigants, unless "particularly important individual interests or rights are at stake." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983). Although the systemic interest in avoiding relitigation—the interest aligned against Sandra's interest in choosing her own legal representatives—is substantial, it is not the kind of interest that justifies stacking the risk of error *against* the private party. Cf. *Bradford Exchange v. Trien's Exchange*, 600 F.2d 99, 102 (7th Cir.1979) (decision concerning authority of counsel based on "affirmative evidence").

On remand in the Tax Court, the first order of business will be determining which body of law governs, and whether Sandra's delegation of all tax matters to Melvin gave him the authority to engage a lawyer to represent them both. If it did not, then the Tax Court should allow discovery and hold an evidentiary hearing to test the statements in the affidavits.

REVERSED AND REMANDED.