FILIP M. DISANZA AND LINDA DISANZA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
DiSanza v. Commissioner
Docket No. 518-86
United States Tax Court
T.C. Memo 1993-142; 1993 Tax Ct. Memo LEXIS 136; 65 T.C.M. (CCH) 2300; April 5, 1993, Filed *136 An appropriate order denying petitioners' motions will be issued. For Filip M. DiSanza, petitioner: Bernard Kobroff and Edward B. Safran (Specially Recognized). For Linda DiSanza, petitioner: Donald Pols and Schlomo Aaron Beilis. For respondent: Patricia A. Donahue and Moira Sullivan. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This matter is before the Court on petitioners' Motions for Leave to File Motions to Vacate or Revise Tax Court Decision, filed pursuant to Rule 162, with proposed *137 Motions to Vacate or Revise Decision lodged with the Court. The underlying issue is whether the final decision of this Court should be vacated on any of the following grounds urged by petitioners: (1) That the decision resulted from a "fraud on the Court"; (2) that the decision resulted from a mutual mistake of fact; or (3) as to petitioner Linda DiSanza, that the Court lacked jurisdiction over her because the purported filing of a petition on her behalf was unauthorized. FINDINGS OF FACT Respondent determined deficiencies in income tax due from petitioners Filip M. and Linda DiSanza for the taxable years 1977 and 1978 in the amounts of $ 79,825.45 and $ 207,809.75, respectively, and also additional interest under section 6621(c) for substantial underpayments attributable to tax-motivated transactions. A petition was filed in this case on behalf of petitioners on January 6, 1986, by David M. Schmudde, who was then their attorney of record in this case. Petitioners resided in New York, New York, when the petition was filed. A stipulated decision executed by respondent and Schmudde was entered on April 21, 1989. Petitioners were married on May 1, 1976, and divorced on December *138 19, 1989. Linda DiSanza (Mrs. DiSanza) holds a master's degree in education and taught elementary school in the United States and Europe for several years. During 1977 and 1978, Filip DiSanza (Dr. DiSanza) was a practicing dentist. During those years, Mrs. DiSanza received wages from Dr. DiSanza's dental practice in the amounts of $ 15,000 and $ 16,200, respectively, and an allowance of $ 1,000 to $ 2,000 every 2 weeks from her husband. Throughout petitioners' marriage, Dr. DiSanza was responsible for handling his family's tax matters. When a document concerning such matters required his wife's signature, Dr. DiSanza presented it to her to sign. During her marriage Mrs. DiSanza signed joint tax returns, amended returns, powers of attorney, and a Tax Court petition for the 1984 and 1985 tax years. She did not review these documents or require any detailed explanation of them. Petitioners executed two Forms 2848, Power of Attorney and Declaration of Representative, signed by both petitioners delegating to Paul Dann (Dann) the authority to represent them before the IRS for the years 1972 through 1983. Dann is a certified public accountant and a partner in the firm of Apfel, *139 Levy, Zlotnick & Company. He prepared tax returns for Dr. DiSanza for approximately 20 years, including periods before, during, and after his marriage to Mrs. DiSanza. Under his standard procedures, Dann sent completed tax returns to Dr. DiSanza for signature. After signing the return, Dr. DiSanza gave the return to his wife for her signature. He then customarily had his office personnel follow the instructions provided by Dann and send the return to the address indicated on the instructions. Dr. DiSanza never advised or informed Dann that he was to represent only Dr. DiSanza and that he was not to represent Mrs. DiSanza. Petitioners signed and filed joint Federal income tax returns for taxable years 1977 and 1978. On their 1977 return, petitioners claimed losses from three tax-advantaged coal partnerships: Coupe, Arton, and Moorehead. On their 1978 return, petitioners claimed losses from Coupe, Arton, Moorehead, and the Benchmark coal program and also claimed losses from the Federal Securities Investments (FSI) Group. On their 1977 joint Federal income tax return, petitioners reported $ 185,000 in wage income, and claimed losses from investments in various partnerships in *140 the amount of $ 179,754. In the notice of deficiency, respondent disallowed $ 141,440 of these losses. On their 1978 joint income tax return, petitioners reported $ 137,200 in wage income, and claimed losses from their partnership investments in the amount of $ 431,049, and from a Schedule C coal venture in the amount of $ 169,134. Respondent subsequently disallowed $ 435,798 of these claimed 1978 losses. Respondent sent a statutory notice of deficiency dated October 7, 1985, to petitioners with respect to their 1977 and 1978 tax years. A copy of this notice was sent to Dann. The statutory notice of deficiency disallowed income averaging and the following losses: 1977
1978
Arton Associates
$ 101,442
$ 20,990
Coupe Associates
39,387
45,650
Moorehead Associates
611
24
FSI Group
-- 200,000
Benchmark
-- 169,134
Totals
$ 141,440
$ 435,798
Upon receipt of the statutory notice, Dr. DiSanza called Dann to discuss it. Dann advised Dr. DiSanza to seek counsel in the matter. Dr. DiSanza then called the general partner of the coal partnerships to inquire about the procedures he should undertake with respect to the notice of deficiency. He was informed that *141 the law firm of Townsend, Rabinowitz, Pantaleoni & Valente (Townsend, Rabinowitz) had been retained by the coal partnerships and that he might call this firm. Townsend, Rabinowitz represented Alphanumeric Incorporated (Alphanumeric), its subsidiaries, and its principals in various litigation. Alphanumeric was either the general partner or the manager of approximately 20 coal programs, including the 4 in which petitioners invested. Mitchell Goldstone (Goldstone) was a director of Alphanumeric, its president, and a substantial shareholder. Alphanumeric employed Townsend, Rabinowitz to represent the coal partnerships in tax litigations. But neither Alphanumeric nor its president made any arrangement for Townsend, Rabinowitz to represent individual limited partners generally with respect to their individual income tax matters. Alphanumeric did not retain the law firm or pay it to provide such representation. After his calls to Dann and Alphanumeric, Dr. DiSanza called Townsend, Rabinowitz and was referred to David M. Schmudde (Schmudde), an attorney of counsel to the law firm. Schmudde had been told by Maynard Rabinowitz (Rabinowitz), a partner in the firm, that he would be filing *142 petitions for the investors in the coal partnerships. Rabinowitz had a long-standing relationship with Goldstone. Generally, in cases involving limited partners in coal partnerships, Schmudde had contact only with the accountants and not with the individual investors in the partnerships. He never met either petitioner prior to the hearing on the present motion, and that was not unusual in his practice. Schmudde was concerned with litigation in more than 40 tax shelter-type partnerships and spoke to 20 to 30 accountants every day at the time that Dr. DiSanza contacted him with respect to filing the petition in this case. Schmudde asked Dr. DiSanza to send him all of the correspondence that he received from the IRS. Dr. DiSanza informed Dann that Schmudde was going to represent him in the Tax Court. Dann and Dr. DiSanza advised Schmudde that he would be handling the coal tax shelter issues and that the law firm of Kirkland & Ellis would be responsible for the terms of the resolution of the FSI issues. Dann was the liaison between the parties and was ultimately responsible for all issues and for coordinating all tax matters. Dann asked Schmudde to file the petition in this case *143 because he did not believe that Kirkland & Ellis would be able to meet the time frame. Kirkland & Ellis provided appropriate language concerning FSI for inclusion in the petition. Dr. DiSanza never advised Schmudde to file the Tax Court petition solely in his name. Schmudde's practice was to file a petition on behalf of the persons listed on the statutory notice when a joint statutory notice was sent to a husband and wife even though only the husband had made an investment in the partnership. Schmudde never was asked to withdraw his representation of Mrs. DiSanza by either Dr. or Mrs. DiSanza until long after the decision in this case became final. Schmudde filed a joint petition to protect Mrs. DiSanza's interests. By letter to Schmudde dated December 19, 1985, Kirkland & Ellis confirmed their understanding that Schmudde would file a petition in response to the October 7, 1985, statutory notice and would be handling the DiSanza case. The Kirkland & Ellis letter indicates on its face that copies were sent to Dann and Dr. DiSanza. By letter dated December 23, 1985, Kirkland & Ellis sent sample language to Schmudde for use in drafting the Tax Court petition with respect to the *144 FSI issues. Schmudde filed a joint petition in this matter on January 6, 1986, and by letter dated January 7, 1986, Schmudde sent a copy of the petition to Dann. Schmudde did not raise income averaging in the petition. Dann did not make any comments regarding the petition to Schmudde or Dr. DiSanza and never suggested to anyone that the petition be amended. After he filed the petition, Schmudde periodically received direct correspondence and copies of correspondence from Kirkland & Ellis regarding the progress of settlement negotiations with the IRS with respect to the FSI issues. By letter dated March 27, 1987, Lawrence Hill (Hill), an attorney with the Office of District Counsel in Washington, D.C., informed Schmudde of a proposed basis for settlement of the FSI issues. By letter dated April 10, 1987, Schmudde mailed to Dann a copy of Hill's letter of March 27, 1987, along with a letter dated March 23, 1987, from the general partner of FSI which together set forth the basis for settlement of the FSI issues. After he was informed of the basis for settlement of the FSI issues, Dann prepared amended returns for Dr. and Mrs. DiSanza for 1978 and 1980. In his view, the settlement *145 agreement required an amended return for 1980 to reflect certain net operating losses and that change had an effect on the DiSanzas' 1978 tax liability. Dann sent copies of amended returns for 1978 and 1980 to petitioners with a cover instruction sheet dated April 30, 1987. The instruction sheet directed that "Upon Receipt" the amended returns should be signed by both taxpayers and mailed to the District Director of Internal Revenue, 1040 Waverly Avenue, Holtsville, N.Y. 00501. These instructions are consistent with the standard procedures employed by Dann and Dr. DiSanza in filing tax returns. They had been followed with respect to the filing of a previous amended return for 1980. Dr. DiSanza did not follow these procedures in 1987. He did not file the amended returns for 1978 and 1980 which Dann sent him with the instruction sheet directing filing. In a letter to Schmudde dated May 8, 1987, Dann enclosed copies of the amended 1978 and 1980 individual income tax returns, and he requested that Schmudde forward these returns to the "revenue agent". Dann did not discuss or explain the ramifications of the amended returns or the net operating loss in his correspondence with Schmudde, *146 but he did discuss the issue of the net operating loss with Filip DiSanza. Dr. DiSanza called Schmudde sometime in mid-1987 to confirm that he had received the amended tax returns from Dann. During this phone call, Schmudde and Dr. DiSanza spoke about the case and discussed the division of responsibility between Schmudde and Dann. Schmudde prepared a letter dated May 12, 1987, addressed to Hill, stating that he was enclosing copies of amended returns in connection with the FSI settlement. Neither this letter nor the copies of the amended returns now are available in IRS records. Those records do not reflect receipt of the copies of the amended returns, and they were not taken into consideration in the IRS' preparation of the stipulation for decision in this case. By letter to Schmudde dated June 9, 1987, IRS District Counsel, Manhattan, confirmed Schmudde's acceptance of an offer to settle Coupe, Arton, Moorehead, and Benchmark and requested out-of-pocket cash substantiation for petitioners' investments in these coal shelters. In a letter to Schmudde dated October 19, 1987, District Counsel, Manhattan, again requested cash verification and confirmed Schmudde's acceptance of *147 the FSI settlement offer. Schmudde verified petitioners' cash contributions to the coal partnerships by letter to Patricia A. Donahue of the Manhattan District Counsel's Office, dated November 24, 1987. After Schmudde received the proposed decision from District Counsel, he forwarded it to Dann for his review. Schmudde requested in his letter that Dann review the items and call him with his comments. Schmudde, who is not experienced or knowledgeable about the preparation of computations, spoke to Dann before returning the documents to District Counsel. Schmudde signed the stipulation for decision on behalf of petitioners, and by letter dated April 5, 1989, sent the executed documents to respondent's counsel for filing with the Court. A stipulated decision in this case showing deficiencies for 1977 and 1978 in the amounts of $ 29,529 and $ 167,508, respectively, was entered by the Court on April 21, 1989. A revised computation was prepared by an IRS auditor in 1991 that would reduce the deficiency as reflected in the stipulated decision by $ 1,588 for 1977 and by $ 22,268 for 1978. OPINION Petitioners' motions for leave to file motions to vacate or revise the decision are *148 a prerequisite to the filing of the motions to vacate or revise decision which they have lodged with the Court. In deciding whether to grant or deny the motions for leave we may consider the merits of the underlying motion to vacate in order to determine whether further proceedings are appropriate. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999 (1978). 1. The "Fraud on the Court" Issue
(a) As to Both Petitioners
Petitioners assert that Townsend, Rabinowitz's and Schmudde's representation of Alphanumeric and Goldstone and also petitioners amounted to a conflict of interest in that by continuing to represent petitioners without advising them or this Court of the conflict, Schmudde deceived both the Court and petitioners. Petitioners contend that this claimed conflict was injurious to them because, allegedly, Alphanumeric and Schmudde colluded to omit intentionally the net operating loss carryback from the tax computation for fear of litigation and the repercussions it would have on Alphanumeric and Goldstone. This Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent expressly permitted by Congress. *149 See, e.g., Judge v. Commissioner, 88 T.C. 1175, 1180-1181 (1987). Sections 7481 and 7483 provide that a decision of this Court becomes final, in the absence of a timely filed notice of appeal, 90 days from the date the decision was entered. However, "in keeping with the inherent power of all courts", this Court has jurisdiction to vacate a void decision. Brannon's of Shawnee, Inc. v. Commissioner, 71 T.C. 108, 112 (1978). Also, we have jurisdiction to set aside a decision which has become final where there is a fraud on the Court. Senate Realty Corporation v. Commissioner, 511 F.2d 929 (2nd Cir. 1975); Abatti v. Commissioner, 86 T.C. 1319 (1986), affd. 859 F.2d 115 (9th Cir. 1988). Because the decision in this case became final upon the expiration of the time allowed for filing a notice of appeal, petitioners must establish that a fraud on the Court exists or that the decision was void. The definition of "fraud on the Court" is a narrow one. Senate Realty Corp. v. Commissioner, supra at 932-933. *150 In Abatti v. Commissioner, 86 T.C. at 1325, this Court stated that: Fraud on the Court is "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud, inter parties, without more, should not be a fraud upon the court." Toscano v. Commissioner, 441 F.2d at 933, quoting 7 J. Moore, Federal Practice, par. 60.33 (2d ed. 1970). To prove such fraud, the petitioners must show that an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court. * * * [Citations omitted.] See also Pulitzer v. Commissioner, T.C. Memo. 1987-408. In Senate Realty Corp. v. Commissioner, supra at 932-933, the Court of Appeals for the Second Circuit stated: The narrow definition of such fraud which has found acceptance in this court generally reflects the policy of putting an end to litigation. *151 See Restatement of Judgments § 1 (1942). We see no good reason here to disturb the decision of the Tax Court. There is no showing of the evil intent, deceit or collusion which have marked those cases where final verdicts have been set aside. * * * The burden is on the moving party to establish such fraud by clear and convincing evidence. Kraasch v. Commissioner, 70 T.C. 623, 626 (1978). Petitioners have not met this burden. Although they assert that Schmudde intentionally failed to raise the net operating loss issue due to a fear that it would subject Alphanumeric to litigation, petitioners simply have failed to prove that allegation. The record establishes that Dr. DiSanza relied on his accountant, Dann, as his primary adviser and representative in tax matters. In the tax litigation here in question, Kirkland & Ellis was employed with respect to the FSI matters and Townsend, Rabinowitz and their associate or counsel, Schmudde, were employed with respect to the coal programs. Dann decided that Schmudde should file the petition and be the attorney of record and therefore petitioners' counsel in the litigation in Tax Court. Dann was authorized *152 to make this appointment and it later was ratified by the actions of Dr. DiSanza for himself and his wife. See John Arnold Executrak Systems, Inc. v. Commissioner, T.C. Memo. 1990-6, also involving the exercise of delegated authority by an accountant entrusted with authority in tax matters. Schmudde handled the FSI matters as he was instructed by Kirkland & Ellis; he handled the coal programs consistently with settlements and the disposition of cases of many other limited partners; and he forwarded amended returns in accordance with Dann's instructions as he understood them. Schmudde forwarded proposed decision documents to Dann and discussed those documents with him. There is no suggestion of fraud on the Court in Schmudde's actions. Despite petitioners' argument to the contrary, there is no evidence that Alphanumeric would have been harmed if Schmudde had insisted upon changing the proposed decision documents to reflect an alleged net operating loss carryback. Instead, the evidence in this case is that any failure to obtain maximum benefits for petitioners may have been the result of misunderstandings or lack of diligence on the part of Dann *153 or Schmudde or petitioners' other advisers or even Dr. DiSanza himself. But even if we were to conclude that Schmudde was negligent in this matter, such conduct would not constitute fraud on the Court. See Kenner v. Commissioner, 387 F.2d 689, 692 (7th Cir. 1968), affg. an unreported order of this Court; see also Dominguez v. United States, 583 F.2d 615, 617 (2d Cir. 1978). Petitioners further assert that Schmudde failed to disclose his firm's representation of Alphanumeric and that such failure amounted to a fraud on the Court. This argument is not tenable because Dr. DiSanza was well aware of Townsend, Rabinowitz's representation of Alphanumeric and Goldstone. Goldstone had informed Dr. DiSanza of this relationship when he recommended the firm to him. Petitioners chose Schmudde to handle the coal partnerships even though (or perhaps because) Dr. DiSanza was aware of the law firm's representation of the coal partnerships and the general partner. Dr. DiSanza cannot now successfully argue that he was deceived by Townsend, Rabinowitz when the evidence clearly indicates that he was aware that the firm represented the *154 general partner when he called Schmudde and asked him to file the petition and handle the Tax Court litigation concerning his investment in the coal partnerships. Unquestionably, there may be problems where an attorney or firm represents both the general partner and limited partners in a tax litigation. See, e.g., Rule 24(f), effective July 1, 1990. But after being informed that the attorney represents the general partner, a limited partner may choose such representation for any of a number of reasons of varying validity. The circumstances that Schmudde and Townsend, Rabinowitz represented petitioners, who were limited partners, when petitioners knew that the law firm also represented the general partner in that same partnership, may be less than ideal. But in this case, petitioners have failed to show that the apparent possibility of conflict of interest, known to petitioners, involved the "evil intent, deceit or collusion which have marked those cases where final verdicts have been set aside." See Senate Realty Corp. v. Commissioner, 511 F.2d at 933. The cases relied on by petitioners are not on point. See, e.g., Wilson v. Commissioner, 500 F.2d 645 (2d Cir. 1974), *155 revg. T.C. Memo. 1973-92, which involved a motion for leave to file a motion to vacate a decision that had not become final; Cinema 5 Ltd. v. Cinerama Inc., 528 F.2d 1384 (2d Cir. 1976), which involved an appeal of an order removing plaintiff's attorney from the case due to the circumstance that he was also a member of the firm representing defendant in another action related to the action at issue. This case did not address the issues of fraud on the Court and the finality of Tax Court decisions. (b) Fraud as to Petitioner Mrs. DiSanza
Petitioners contend that there was an additional fraud upon the Court as to Mrs. DiSanza in that Schmudde failed to raise an innocent spouse defense on her behalf because of his alleged conflict of interest in representing petitioners and also representing Goldstone and Alphanumeric. They argue that Schmudde "could not represent Linda as an innocent spouse without being prepared to prove that the tax shelters promoted by Alphanumeric were 'phony'." The record here does not support the claim that counsel failed to make an innocent spouse argument because of a conflict of interest. The *156 evidence is that petitioners and their tax adviser, Dann, were concerned with the consequences of the investments in FSI and coal programs, and they employed Townsend, Rabinowitz and Schmudde in their efforts to resolve those matters. Schmudde never met either petitioner and he never even spoke with Mrs. DiSanza. Neither petitioners nor their tax adviser gave Schmudde any reason to believe there was an innocent spouse issue in the case, and there is no reason to believe the issue was omitted from the case because of any collusion or fraud. Even if we were to conclude that Mrs. DiSanza was entitled to the benefits of section 6013(e), we should not vacate the stipulated decision because of the failure of counsel to raise that issue. See Slavin v. Commissioner, 932 F.2d 598, 601 (7th Cir. 1991), revg. on another ground T.C. Memo. 1990-44, involving failure to raise an innocent spouse argument: There is no principle of effective assistance of counsel in civil cases. Shortcomings by counsel may be addressed in malpractice actions; they do not authorize the loser to litigate from scratch against the original adversary. [Citations *157 omitted.] The argument for relief for Mrs. DiSanza under section 6013(e) may have been omitted through error or oversight or lack of communication or because counsel considered, correctly or incorrectly, that the argument was invalid, but the record here does not establish that such argument was omitted for reasons amounting to fraud on the Court. 2. Mutual Mistakes of Fact
Petitioners assert that there are three mutual mistakes of fact in this case. Petitioners contend that the FSI settlement was incorrectly set forth in the computation, the computation failed to allow petitioners a net operating loss carryback from 1980 to 1978, and the computation failed to allow petitioners the benefit of income averaging. Petitioners rely on Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955), and argue that the decision entered in their case should be vacated because of mutual mistakes of fact. As an Article I court, the Tax Court lacks general equitable powers, Commissioner v. McCoy, 484 U.S. 3, 7 (1987), and our jurisdiction to grant equitable relief of the type petitioners seek is limited. See Abatti v. Commissioner, 86 T.C. 1319 (1986), *158 affd. 859 F.2d 115 (9th Cir. 1988); see also Lentin v. Commissioner, 243 F.2d 907 (7th Cir. 1957); Lasky v. Commissioner, 235 F.2d 97, 99-100 (9th Cir. 1956) (criticizing Reo Motors, Inc. v. Commissioner, supra), affd. per curiam 352 U.S. 1027 (1957). This case does not involve mutual mistakes of fact. The erroneous computation which petitioners claim was due to a mutual mistake of fact was prepared and sent to petitioners' counsel for review and was returned to respondent. [2] The failure of petitioners to raise the net operating loss issue and the failure to compute the tax by income averaging were not mutual mistakes of fact, but were at most unilateral errors on the part of petitioners. Petitioners failed to raise these issues and now, long after the decision is final, they ask us to vacate the decision and try the case on new facts. We must decline to do so in the interest of bringing litigation to an end on the terms on which the parties agreed prior to entry of decision. See Stamm International Corp. v. Commissioner, 90 T.C. 315 (1988). *159 3. Mrs. DiSanza's Assertion that the Court Lacked Jurisdiction Over Her When the Decision was Entered
Petitioners contend that the decision should be vacated as to Mrs. DiSanza because, according to petitioners, she never intended to be a party to this action. Her argument is that she never employed Schmudde or Townsend, Rabinowitz and did not authorize anyone else to employ them on her behalf. She testified that she had no knowledge about the dispute with the IRS in this case until shortly before the hearing on the present motions. Consequently, Mrs. DiSanza's position is that because neither she nor an attorney or other person authorized to act on her behalf filed a petition, this Court never obtained jurisdiction over her and the decision should be vacated. Whether an attorney has authority to act on behalf of a taxpayer is a factual question. Adams v. Commissioner, 85 T.C. 359, 369-372 (1985). *160 Under common law rules of agency, applicable to determine the employment of an attorney, authority may be granted by an express statement or may be derived by implication from the principal's words or deeds. See John Arnold Executrak Systems, Inc. v. Commissioner, T.C. Memo. 1990-6 (citing Restatement, Agency 2d, sec. 26 (1957)). In Kraasch v. Commissioner, 70 T.C. 623, 627 (1978), we decided that the taxpayers' practice of continually forwarding tax matters to their accountant established an implied grant of authority. Similarly in Shopsin v. Commissioner, T.C. Memo. 1984-151, affd. without published opinion 751 F.2d 371 (2d Cir. 1984), we held that the taxpayers' accountant was authorized to petition the Tax Court because the taxpayers routinely and without question placed their tax affairs in the hands of their accountant. In Casey v. Commissioner, T.C. Memo. 1992-672, the taxpayer impliedly authorized her husband to represent her with respect to their joint income tax matters even after they established separate residences *161 a few years before divorce. She executed a power of attorney to their accountant and continued to forward communications from IRS to the accountant or her husband. We held that an attorney employed by her husband was authorized to file a joint petition as a result of her implied consent and that this Court had jurisdiction with respect to her. In the present case, Dr. DiSanza testified that he was responsible for his family's financial and tax matters, and Mrs. DiSanza agreed that she had no involvement in any of her husband's financial matters except for payment of ordinary household expenses. She also stated that she regularly set aside the family's business mail for her husband. With respect to the years in issue, she signed the joint tax returns and also executed the power of attorney authorizing Dann to act for her as well as her husband as to tax matters before the IRS for those and many other years. Mrs. DiSanza's admitted relinquishment of authority to her husband with respect to tax and financial matters was a delegation of authority that would allow Dr. DiSanza directly or through Dann, the family accountant and tax adviser, to hire a lawyer to represent her, especially *162 with regard to matters arising out of their joint income tax returns. See Slavin v. Commissioner, 932 F.2d 598, 600 (7th Cir. 1991), revg. T.C. Memo. 1990-44. Even if Mrs. DiSanza was not aware of the dispute with the IRS, her own admitted delegation of authority to her husband cannot now be revoked because she is unhappy with the outcome of her case. "Deficiencies ex post do not detract from authority ex ante." Id.
The evidence in this case points inescapably to the conclusion that Dr. DiSanza acted on his wife's behalf and with her approval when he authorized Schmudde to petition this Court for a redetermination of the deficiencies and additions to tax for the years in issue. See Holt v. Commissioner, 67 T.C. 829, 832 (1977); Brooks v. Commissioner, 63 T.C. 709 (1975); Casey v. Commissioner, supra.
Nevertheless, petitioners urge that the decision of this Court as to Mrs. DiSanza be vacated because she did not actually authorize Schmudde to file the petition on her behalf or subsequently ratify his act in doing so. Mrs. *163 DiSanza contends that her case is similar to Abeles v. Commissioner, 90 T.C. 103 (1988), but the cases are plainly different. When the notice of deficiency was mailed and the petition and amended petition were filed, Mr. and Mrs. Abeles were in the process of divorce. Petitioners were still married in 1981 when Mrs. DiSanza signed the power of attorney, were still married in 1986 when the petition was filed, and were still married until after the decision in this case became final. Moreover, Mrs. Abeles was not aware that Federal income tax returns were filed for the years at issue, and never executed a power of attorney. Mrs. DiSanza signed the joint returns and executed two powers of attorney. The agency relationship that may have existed in the Abeles case was terminated by the severance of the marital relationship. The agency relationship in this case was not severed until after the decision was final. Mrs. DiSanza was aware or should have been aware that there was an audit underway when she signed the power of attorney forms. She delegated authority in tax matters to her husband and specifically employed Dann herself. They employed *164 Schmudde, who acted properly in petitioning the Tax Court on behalf of Dr. and Mrs. DiSanza. Under the circumstances here, Mrs. DiSanza impliedly consented to the filing of a joint petition. Consequently, this Court had jurisdiction with respect to her. Petitioners' motions for leave to file motions to vacate or revise the Court's decision entered on April 21, 1989, will be denied. An appropriate order denying petitioners' motions will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. A revised computation prepared by an IRS auditor in 1991 provides that the tax should be reduced by $ 1,588 in 1977 and $ 22,268 in 1978.↩