ESTATE OF THOMAS P. QUIRK, DECEASED, GREGORY J. QUIRK AND NORMAN D. ROLLINS, CO-ADMINISTRATORS, AND MARY C. QUIRK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Quirk v. Commissioner
Docket No. 28148-82
United States Tax Court
T.C. Memo 1995-234; 1995 Tax Ct. Memo LEXIS 237; 69 T.C.M. (CCH) 2746; May 31, 1995, Filed *237 The decision entered Oct. 31, 1989, following T.C. Memo. 1988-286 will be vacated and set aside pursuant to the remand of the Court of Appeals for the Sixth Circuit, and a decision identical to the Oct. 31, 1989, decision will be entered in accordance with the Rule 155 computation filed on May 26, 1989. For Mary Quirk, petitioner: Joe Vaulx Crockett III. For respondent: Drita Tonuzi. CLAPP
CLAPP
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: This case is before the Court on remand from the Court of Appeals for the Sixth Circuit for further consideration consistent with the Court of Appeals' decision. Estate of Quirk v. Commissioner, 928 F.2d 751 (6th Cir. 1991), affg. in part and remanding T.C. Memo. 1988-286. The issue for decision on remand is whether Mary C. Quirk (petitioner) authorized or ratified the filing of a petition in this Court relating to her 1974 joint Federal income tax return. We hold that she did. Respondent determined a deficiency in the 1974 joint Federal income tax return (1974 joint return) filed by petitioner and Thomas P. Quirk (Mr. Quirk). In T.C. *238 Memo. 1988-286, we issued an opinion adverse to petitioner and the Estate of Thomas P. Quirk. Petitioner argues that she neither authorized nor ratified the filing of the petition in this Court. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. We incorporate by reference the stipulation of facts and attached exhibits. Petitioner resided in Stamford, Connecticut, at the time the petition was filed. In September 1972, petitioner and Mr. Quirk (the Quirks) separated after 15 years of marriage. Petitioner retained a divorce attorney in January 1973. On March 25, 1975, the Quirks executed a divorce settlement, and they were divorced in May 1975. Pursuant to the divorce settlement, the Quirks agreed to file a 1974 joint return, and Mr. Quirk agreed to pay the income tax due for 1974. Mr. Quirk also agreed to indemnify petitioner and hold her harmless from any deficiency assessment or tax lien arising from their 1974 joint return, including interest and penalties, and all expenses incurred if he contested the assessment. Petitioner's divorce attorney prepared the divorce *239 agreement and represented petitioner concerning her divorce. Jerome R. Rosenberg (Rosenberg) prepared the Quirks' joint Federal income tax returns for 1970 through 1974. As outlined in detail below, Rosenberg wrote several letters to the Quirks, but Rosenberg communicated almost exclusively with Mr. Quirk. Mr. Quirk would either hand deliver or mail documents to petitioner for her signature. Petitioner did not interact with Rosenberg concerning the 1974 joint return, but instead she dealt with Mr. Quirk. On June 20, 1975, and again on August 22, 1975, respondent approved the Quirks' "Application for Extension of Time to File" (Form 2688) extending to October 15, 1975, the time to file their 1974 joint return. Rosenberg signed both Forms 2688 as preparer. On or about October 15, 1975, the Quirks filed their 1974 joint return. The signatures of petitioner, Mr. Quirk, and Rosenberg appear on the 1974 joint return. Petitioner's signature is not authentic, but she did expect to sign the 1974 joint return, and she also expected the 1974 joint return to be filed on her behalf. Petitioner knew that Rosenberg prepared the 1974 joint return. In a letter dated August 11, 1976, Rosenberg *240 forwarded to Mr. Quirk a Power of Attorney (Form 2848) for the Quirks to execute. The Form 2848 authorized Rosenberg to represent the Quirks before the Internal Revenue Service (IRS) concerning their 1974 joint return. The Form 2848 shows Thomas P. and Mary C. Quirk as taxpayers with the address 170 Turney Road, Fairfield, Connecticut. The Quirks executed the Form 2848 on August 25, 1976. Petitioner did not seek, nor did she receive, any advice as to the power of attorney prior to signing. The Quirks signed several consents to extend the time to assess tax (Forms 872). The taxpayers' address shown on each of the first five Forms 872 is 170 Turney Road, Fairfield, Connecticut. Rosenberg mailed the first Form 872 to Mr. Quirk on December 30, 1977, and requested that the Quirks sign the Form 872, which extended the time to assess tax to December 31, 1978. Mr. Quirk and petitioner signed the Form 872 on January 6, 1978, and January 19, 1978, respectively. At the time she executed the first Form 872, petitioner lived at 100 Hope Street, Stamford, Connecticut. Petitioner knew that the first Form 872 involved the 1974 joint return, and she also knew that the Form 872 extended the *241 time for respondent to assess tax. Rosenberg mailed the second Form 872 to Mr. Quirk on November 6, 1978, and requested that the Quirks sign the Form 872, which extended the time to assess tax to December 31, 1979. Mr. Quirk executed the second Form 872 on November 9, 1978. That same day, November 9, 1978, Mr. Quirk mailed the second Form 872 to petitioner for her signature and requested that petitioner forward the signed Form 872 to Rosenberg, using an addressed, stamped envelope provided to her. Petitioner executed the second Form 872 on November 11, 1978, and forwarded it to Rosenberg. Rosenberg forwarded the second Form 872 to respondent on November 17, 1978. Rosenberg mailed the third Form 872 to Mr. Quirk on August 31, 1979, and requested that the Quirks sign the Form 872, which extended the time to assess tax to December 31, 1980. Mr. Quirk executed the third Form 872 on September 10, 1979, and petitioner executed the third Form 872 on or about September 26, 1979. Rosenberg forwarded the third Form 872 to respondent in a letter dated September 28, 1979. Rosenberg mailed the fourth Form 872 to Mr. Quirk on September 8, 1980, and requested that the Quirks each sign the *242 Form 872, which extended the time to assess tax to December 31, 1981. Mr. Quirk executed the fourth Form 872 on October 30, 1980. Petitioner's signature appears on the fourth Form 872 next to the date November 1, 1980, but petitioner's signature is not authentic. Rosenberg believed, however, that petitioner's signature was authentic. Petitioner mailed Rosenberg a letter dated October 8, 1980, that is unrelated to the Forms 872. In that letter, petitioner confirmed that she received $ 18,600 in alimony from Mr. Quirk for the year 1979. Mr. Quirk drafted the letter dated October 8, 1980, and mailed it to petitioner for her signature. Petitioner signed the letter on October 12, 1980, and forwarded it to Rosenberg, using an addressed, stamped envelope provided to her by Mr. Quirk. On May 5, 1981, Rosenberg mailed Mr. Quirk the protest to be filed with respondent, and he requested that the Quirks sign the protest. The Quirks' signatures appear on the protest, but no date accompanies the signatures, and petitioner's signature is not authentic. However, Rosenberg believed that petitioner signed the protest. Mr. Quirk forwarded the executed protest to respondent in a letter dated *243 May 18, 1981. In a letter dated June 25, 1981, Mr. Quirk informed petitioner that he considered the 1974 tax liability, as well as the legal and accounting costs, a joint liability. Petitioner discussed the June 25, 1981, letter with her divorce attorney, who told her not to worry because the divorce agreement protected her. The Quirks executed a fifth Form 872 that extended the time to assess tax to June 30, 1982. Mr. Quirk executed the fifth Form 872 on July 31, 1981. In a letter to petitioner dated August 7, 1981, Mr. Quirk enclosed the fifth Form 872 for her signature. In a letter to respondent dated August 7, 1981, Mr. Quirk requested that future correspondence involving petitioner and the 1974 joint return be mailed directly to petitioner. On August 9, 1981, Mr. Quirk mailed two separate letters to Rosenberg. In one of the August 9, 1981, letters, Mr. Quirk delivered to Rosenberg a copy of the letter from Mr. Quirk to petitioner dated June 25, 1981, the signed original of the letter from Mr. Quirk to petitioner dated August 7, 1981, and the signed original of the letter from Mr. Quirk to respondent dated August 7, 1981. Rosenberg apparently mailed Mr. Quirk's August *244 7, 1981, letters to petitioner and respondent, respectively. Also in this August 9, 1981, letter to Rosenberg, Mr. Quirk explained that he considered invalid the divorce agreement in which he accepted responsibility for all tax problems relating to the 1974 joint return. Mr. Quirk explained that relations between himself and petitioner were deteriorating, and he expected petitioner to take an adversarial or "no action" posture in any matters that involved him. Mr. Quirk also wrote that he expected petitioner to address her problems directly with respondent. In the other August 9, 1981, letter to Rosenberg, Mr. Quirk discussed generally the upcoming meeting with respondent's appeals officer and the various issues to be addressed. Petitioner executed the fifth Form 872 on August 17, 1981. On or about August 13, 1981, Mr. Quirk moved to Nashville, Tennessee. After moving to Tennessee, Mr. Quirk stopped making alimony payments to petitioner. Petitioner's divorce attorney advised her to stop cooperating with Mr. Quirk in tax matters while the alimony payments were in arrears. Acting on her divorce attorney's advice, petitioner stopped signing tax documents that Mr. Quirk asked *245 her to sign. In a letter dated November 6, 1981, Rosenberg informed Mr. Quirk of the time and date of the meeting with respondent's appeals officer. Rosenberg mailed the sixth Form 872 to Mr. Quirk on April 5, 1982, and requested that the Quirks sign the Form 872, which extended the time to assess tax to December 31, 1982. Mr. Quirk executed the sixth Form 872 on April 20, 1982. In a letter dated April 20, 1982, Mr. Quirk informed Rosenberg that petitioner refused to sign the sixth Form 872. On April 26, 1982, Rosenberg executed the sixth Form 872 on petitioner's behalf as follows: "Mary C. Quirk by Jerome R. Rosenberg under power of attorney dated August 25, 1976". The taxpayers' addresses shown on the sixth Form 872 are 129 Arden Place, Nashville, Tennessee, for Mr. Quirk and 100 Hope Street, Stamford, Connecticut, for petitioner. In a letter dated June 27, 1982, Rosenberg informed respondent of the Quirks' separate addresses. Respondent mailed a notice of deficiency dated September 10, 1982, addressed to "Mr. Thomas P. Quirk" at "4400 Belmont Park Terrace, Nashville, Tennessee 37215 and 129 Arden Place, Nashville, Tennessee 37211", and to "Thomas P. Quirk and Mary Quirk" *246 at "4400 Belmont Park Terrace, Nashville, Tennessee 37215, and 129 Arden Place, Nashville, Tennessee 37211, and 100 Hope Street, Stamford, Connecticut 06906". Enclosed with each notice of deficiency was a Form 4089 "Notice of Deficiency-Waiver" that indicated Rosenberg as the taxpayers' authorized representative. Petitioner discussed the notice of deficiency with an attorney with whom she worked. Petitioner also discussed the notice of deficiency with her divorce attorney. Both attorneys advised petitioner that she need not worry about the notice of deficiency because Mr. Quirk had agreed to pay the tax and handle all tax matters concerning the 1974 joint return. Petitioner did not discuss the notice of deficiency with Rosenberg. On November 30, 1982, Rosenberg filed in this Court a joint petition. Rosenberg signed the petition, and the caption reads: "THOMAS P. AND MARY C. QUIRK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent". By letter dated November 29, 1982, Rosenberg mailed Mr. Quirk copies of the petition, the Request for Place of Trial, and the cover letter mailed to the Clerk of this Court. In a separate letter dated November 29, 1982, Rosenberg informed *247 petitioner that a petition had been filed with this Court on her behalf. Rosenberg enclosed for petitioner's review copies of the petition, the Request for Place of Trial, and the cover letter mailed to the Clerk of this Court. Petitioner discussed with her divorce attorney the November 29, 1982, letter from Rosenberg, and the divorce attorney assured petitioner that she was protected by the divorce agreement. Petitioner did not discuss the petition with Rosenberg. Mr. Quirk died intestate on May 5, 1984, and on June 22, 1984, the Probate Court of Davidson County, Tennessee, appointed Mr. Quirk's son, Gregory J. Quirk, co-administrator of Mr. Quirk's estate. Petitioner believed that Mr. Quirk's estate had sufficient assets to meet its obligations, and she filed a claim against the estate for unpaid alimony. On August 30, 1985, Rosenberg wrote to petitioner and informed her that Mr. Quirk's estate had retained him to appear before the U.S. Tax Court concerning the 1974 tax liability owed by petitioner and Mr. Quirk. Rosenberg informed petitioner that the case was scheduled for trial in New York the week of December 9, 1985, and he offered to discuss any questions that petitioner *248 or her attorney had about the case. After receiving the August 30, 1985, letter from Rosenberg, petitioner discussed the matter with her divorce attorney, who told her not to worry about the 1974 tax liability because Mr. Quirk accepted responsibility for that liability in the divorce agreement. Petitioner did not attend the original trial in this Court on December 17, 1985. In a letter dated April 25, 1986, Rosenberg mailed the administrators of Mr. Quirk's estate copies of the parties' briefs filed in this Court. Rosenberg did not mail a copy of the briefs to petitioner. On June 29, 1988, this Court filed its Memorandum Findings of Fact and Opinion in Estate of Thomas P. Quirk v. Commissioner, T.C. Memo. 1988-286, an opinion adverse to petitioner and the Estate of Thomas P. Quirk. Petitioner learned of the outcome in T.C. Memo. 1988-286 in March 1990 from Lee Woodruff, an attorney, who informed petitioner that his firm was handling the appeal of the Tax Court decision. Mr. Woodruff also informed petitioner that she could be liable personally for the 1974 tax liability. Petitioner then retained her present attorney. *249 OPINION Respondent argues that petitioner authorized Rosenberg to file a petition on her behalf, or in the alternative, that petitioner ratified the filing of the petition. Petitioner argues that she did not authorize Rosenberg to file a petition on her behalf and that she did not have sufficient knowledge of the relevant facts to ratify the filing of the petition. We agree with respondent. Whether an attorney has authority to act on behalf of a taxpayer is a factual question to be decided according to the common law principles of agency. Adams v. Commissioner, 85 T.C. 359, 369-372 (1985); Kraasch v. Commissioner, 70 T.C. 623, 627-629 (1978). Under common law principles of agency, authority may be granted by express statements or may be derived by implication from the principal's words or deeds. Dahl v. Commissioner, T.C. Memo. 1995-179; DiSanza v. Commissioner, T.C. Memo. 1993-142, affd. 9 F.3d 1538 (2d Cir. 1993); Casey v. Commissioner, T.C. Memo. 1992-672; John Arnold Executrak Systems, Inc. v. Commissioner, T.C. Memo. 1990-6. *250 Petitioner argues that she did not authorize Rosenberg, either through her acts or her silence, to act on her behalf and file a petition in this Court. Petitioner agreed to file the 1974 joint return, and even though she did not sign the return, she expected that the return would be filed on her behalf. Petitioner knew that a dispute existed with respondent concerning the 1974 joint return, and she signed a power of attorney authorizing Rosenberg to represent her before the IRS. Petitioner signed at least four Forms 872 extending the time for respondent to assess tax arising from the 1974 joint return. Petitioner received, and discussed with her divorce attorney, the notice of deficiency, but she did not contact Rosenberg. Petitioner cooperated with Rosenberg and Mr. Quirk when she signed documents relating to the 1974 joint return, at least one of which she returned directly to Rosenberg. Petitioner's course of conduct indicates that she intended to proceed with the tax dispute in the same manner as Mr. Quirk. We conclude that Rosenberg's filing of the petition was of the same general nature as that which petitioner had expressly authorized, and that Rosenberg acted pursuant *251 to petitioner's authorization when he filed the petition in this Court on her behalf. The fact that petitioner refused to sign the sixth Form 872 does not change our conclusion. Petitioner made clear at the trial on remand that she refused to sign the sixth Form 872 because Mr. Quirk had stopped making alimony payments. Nothing in the record indicates that petitioner refused to sign the sixth Form 872 because she no longer intended to contest the tax in issue, or that she intended to take a position different from the position asserted by Mr. Quirk, or that she no longer intended to have Rosenberg act on her behalf. From the time that the 1974 joint return was filed through the original trial in December 1985 in this Court, petitioner has never voiced a position different than that taken by Mr. Quirk. Petitioner's decision to align her position with that of Mr. Quirk is understandable since petitioner believed that, pursuant to the terms of the divorce agreement, any liability arising from the 1974 joint return would fall squarely on Mr. Quirk. Petitioner believed that Mr. Quirk, and later his estate, had adequate resources to satisfy the disputed tax liability. Petitioner *252 knew that Rosenberg was handling the tax dispute concerning the 1974 joint return, but she chose not to consult with Rosenberg. Instead she sought advice from her divorce attorney and an attorney with whom she worked. Petitioner's divorce attorney advised her that the tax liability would fall on Mr. Quirk. This advice may have been correct but it did not go far enough. Petitioner's divorce attorney also should have advised petitioner that the divorce agreement was not binding on respondent, and further that she remained jointly and severally liable for the tax deficiency and could recover from Mr. Quirk only if he was able to pay. Petitioner argues that she "should not be penalized for receiving bad advice from other attorneys." Assuming petitioner was given "bad advice", this is not the proper forum for petitioner to seek redress for that alleged wrong. We also conclude that even if Rosenberg filed the petition in this Court without petitioner's express or implied authority, petitioner subsequently ratified Rosenberg's actions after learning that the petition had been filed. Petitioner argues that she was unable to ratify Rosenberg's acts because she lacked knowledge of all *253 the material facts. When she received the notice of deficiency, she sought advice from her divorce attorney and another attorney with whom she worked. When petitioner received a copy of the petition she knew, or should have known, that she was a party in a case pending before this Court. Petitioner possessed sufficient information to know that the dispute existed. Indeed, petitioner's actions indicate that she appreciated the gravity of the situation and decided not to take an active role. She discussed the petition with her divorce attorney. Petitioner decided not to participate initially with respondent and later in this Court. This is not a case where petitioner lacked information. To the contrary, petitioner repeatedly discussed the matter with legal counsel, and for whatever reasons decided on a plan of inaction. We conclude that petitioner ratified the filing of the petition. Petitioner argues that Rosenberg did not "represent" her. However, petitioner's argument focuses on the quality of the representation which is irrelevant to the issue before us. We have concluded that petitioner authorized and ratified the filing of the petition in this Court, but we find the *254 facts of this case disturbing. This case, from its inception, was ripe for a conflict of interest between Rosenberg and petitioner. As the case matured, the possibility of a conflict became more obvious, and Rosenberg should have recommended that petitioner obtain separate tax counsel to represent her. Rosenberg testified that he was engaged to handle the technical partnership tax issues, and therefore never raised an innocent spouse issue or discussed any other possible defenses with petitioner. Rosenberg's suggestion at trial that petitioner should have raised these issues with him is ludicrous. In these circumstances, Rosenberg, as the lawyer representing Mr. Quirk and petitioner, should have at least suggested the possibility that petitioner had an innocent spouse defense and recommended that she get separate counsel. Because Rosenberg primarily represented Mr. Quirk, the possibility of a conflict was obvious, particularly when Rosenberg learned that Mr. Quirk was going to renege on the divorce agreement. In addition, Gregory Quirk's testimony makes clear that Mr. Quirk's estate had very little money, and that Rosenberg projected that all of the assets would be consumed *255 if the appeal of this Court's decision in T.C. Memo. 1988-286 was unsuccessful. We believe Gregory Quirk had a moral and ethical, if not a legal, obligation to inform petitioner, his mother, that the estate might not have the resources to pay the tax liability. However, Gregory Quirk testified that he too was under the mistaken belief that, pursuant to the divorce agreement, petitioner could not be held responsible for the tax liability. We again turn to Rosenberg who, according to Gregory Quirk's testimony, estimated that if the estate lost on appeal it would be broke, and the respondent would have to "just go away." That would perhaps be true as to the estate, but Rosenberg certainly knew that respondent would not "go away" as to petitioner. Nonetheless, these facts go to the quality of the representation, and they are not relevant to the issue of whether petitioner authorized or ratified the filing of the petition in this case. Petitioner knew that the petition had been filed. This Court relied on the petition as did respondent. Petitioner could not have been so naive as to believe that she could do nothing and expect the matter to disappear. *256 Petitioner did nothing to protect herself. At a minimum, she should have talked directly with Rosenberg. Petitioner must bear the ultimate responsibility for her personal tax matters. She was in a position to disaffirm any unauthorized acts by Rosenberg long before the original trial commenced in this Court. Kraasch v. Commissioner, 70 T.C. 623, 628 (1978). We conclude that petitioner authorized and ratified the filing of the petition. The decision entered Oct. 31, 1989, followingT.C. Memo. 1988-286 will be vacated and set aside pursuant to the remand of the Court of Appeals for the Sixth Circuit, and a decision identical to the Oct. 31, 1989, decision will be entered in accordance with the Rule 155 computation filed on May 26, 1989.