Bowman, Exrx., *v.* Bowman et al.

(No. 666877—Decided May 5, 1965.)

*Messrs. Hendershott & Hendershott,* for executrix.
*Mr. Joel M. Garver,* for guardian ad litem.

Andrews, Chief Referee. Petitioner, Mrs. Irma A. Bowman, is the executrix of the will of Vince G. Bowman, who died on September 17, 1964. She asks the Court to construe items 2, 3, 4(3), and 4(4) of the will. The petition states, and the parties concede, that items 4(1) and 4(2) are inoperative because at the time of his death the testator did not own the property therein devised.

Item 2 reads as follows:

"I give, devise and bequeath any and all business enterprises that I may own or have the right to dispose of at the time of my decease, to my wife, Irma A. Bowman, provided, however, that after six (6) months from the date of my decease, I make my daughter, Doris E. Briggs, a full partner in all such business enterprises with my wife, Irma A. Bowman; provided further that upon the death of Irma Bowman then the business enterprises above mentioned are to be solely owned by my daughter, Doris E. Briggs."

It is evident that a "business enterprise," as referred to in the will, must consist of some sort of business capable of being transferred by will. For example, had testator owned, as an individual proprietor, a grocery store business, he could have transferred his ownership by will or, for that matter, by an inter vivos transaction.

However, the evidence shows that Mr. Bowman, the deceased, was a "manufacturer's representative," doing business under the name of Vince G. Bowman Company, with offices at 4500 Euclid Avenue, Cleveland, Ohio. The company was not incorporated. Mr. Bowman was "the company." Income tax returns were filed by him as sole proprietor. There was no written lease for the offices, and the tenancy was apparently from month to month.

At the time of Mr. Bowman's death, the company (meaning Mr. Bowman) was the sales representative for six manufacturing companies. As such, the company negotiated sales on behalf of the manufacturers. The buyers of the products paid the manufacturer directly, and the manufacturer, in turn, paid a monthly commission to the Vince G. Bowman Company.

Except in the case of one manufacturer, there was no written contract, and even with this manufacturer, as with the others, the arrangement was not for a fixed period. To the contrary, the relationship could be canceled by either party at any time. Moreover, there was testimony that the right to represent the various manufacturers was regarded as personal and nontransferable.

John Briggs, the testator's son-in-law, worked as a salesman for Vince G. Bowman Company, beginning in 1953. Before his employment by Mr. Bowman, the testator, the matter was cleared with the various manufacturers, who gave their consent

thereto. Mr. Briggs was paid a salary by Vince G. Bowman company, plus a year-end bonus when warranted.

After Mr. Bowman's death, Mr. Briggs became the manufacturer's representative for the six companies. This was through appointment by the companies. With permission of Mrs. Irma A. Bowman, the testator's wife, Mr. Briggs continues to use the name Vince G. Bowman Company. He is located at the same office, and pays the rental.

The company has about one thousand dollars' worth of office furniture, which, of course, is part of Mr. Bowman's estate. By agreement among members of the family, Mr. Briggs is continuing to use the office furniture.

At the time of testator's death, the company also had funds on deposit in the bank, and there was money due it by way of accounts receivable. These items, too, were part of Mr. Bowman's estate.

The inventory and appraisement, under "Accounts and Debts Receivable," lists $18,000 due the testator as "Vince G. Bowman & Company, Manufacturer's Representative, unincorporated business." It is conceded that the $18,000 includes, in addition to actual accounts receivable, the furniture and bank accounts.

In addition to the above assets of the estate allocated to the Vince G. Bowman Company, the inventory and appraisement shows savings accounts totaling $18,803.03, apparently unrelated to the business of the company.

It is obvious that Mr. Bowman did not own the type of "business enterprise" which can be transferred by will, sale, or otherwise. He was in legal effect an agent or broker for the firms he represented, and the law of agency governed the rights and liabilities of the parties. See Restatement, Agency 2d, Sec. 1; Comment *e*; 12 American Jurisprudence 2d, Brokers, Secs. 1 and 30.

The very definition of agency precludes the agent from transferring this sort of "business enterprise" by will or otherwise, as shown by Restatement, Agency 2d, Sec. 1:

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

There can be no agency without the consent of the principal. The principal appoints or employs the agent. And it is basic that death terminates the agency in the absence of a power coupled with an interest, which is not present here. See Restatement, Agency 2d, Sec. 121; 3 American Jurisprudence 2d, Agency, Sec. 54; 12 American Jurisprudence 2d, Brokers, Sec. 63. The rule is so strict that even where the agent, with authority, has appointed a subagent, the death of the agent terminates the authority of the subagent to act for the principal. Restatement, Agency 2d, Sec. 121, Comment *b*.

It is clear that the testator had no power to transfer to another person by will or in any other manner his right to represent his principals as their agent. And this was the only "business enterprise" in which he was engaged.

Admitting, as we have seen, that the testator had no power to bequeath his agency, may we say that Item 2 is nevertheless effective to pass the assets of the Vince G. Bowman Company, consisting of the furniture, bank accounts, and accounts receivable? I think not. The wording of Item 2 indicates an intention to bequeath a going business, to be operated by the widow for six months; then by the widow and her daughter, Mrs. Doris E. Briggs, as partners; and after the death of Mrs. Bowman, the widow, by Mrs. Briggs alone.

Although had there been a "business enterprise" to bequeath, the assets would have passed as part of it, I think it would be completely illogical and unrealistic to interpret Item 2 as passing the mere furniture and other business assets when there was no devisable business enterprise. After all, it would be rather ludicrous to hold that Mrs. Bowman and her daughter could be partners in a desk. Moreover, desks, bank accounts, and accounts receivable are not, by themselves, "business enterprises."

For the reasons given, I hold that item 2 is inoperative and that nothing passes by it.

Item 3 reads as follows:

"All the rest, residue, and remainder of my property, real, personal or mixed, of every kind and description and wheresoever situated, now owned by me or hereafter acquired, I give, devise and bequeath to my wife, Irma A. Bowman, to be held and used by her for and during

her natural life, with full power, should she need or desire the same, to use the entire net income from all of my said estate for her support and comfort so long as she may live, and if for any reason the net income of my estate should be insufficient to support her, then she is hereby authorized, in the exercise of her discretion, to sell and use so much of the principal of my estate as may be needed for such purpose."

Inasmuch as item 2 has been held inoperative, the assets of the testator used in the Vince G. Bowman Company, as well as the other assets in the estate remaining after the payment of debts and other obligations, will pass to Mrs. Irma A. Bowman under the provisions of item 3.

What estate in the property does she take? It has been suggested that she receives an absolute estate equivalent to a fee simple. I do not agree.

The language of item 3 clearly gives a life estate with power to consume all or part of the principal as needed, in her discretion, for her support and comfort.

Although the words "and comfort" do not appear in the passage relating to principal, I think it clear that the term "support and comfort," appearing in the passage relating to the use of the entire net income, was meant to carry over to the authority to use principal.

By item 4 there is a gift over, upon the widow's death, of the "rest, residue and remainder," which, taken in connection with Item 3, must mean what has been unconsumed by her pursuant to the authority bestowed upon her in item 3.

Where there is a gift for life to A, plus a power in A to consume or dispose of any or all of the property, with remainder over, A takes a life estate plus the designated power, not a fee simple. 76 A. L. R. 1153; 4 Bowe-Parker, Page on Wills, Section 37.32; Sparks, A Decade of Transition in Future Interests, 45 Va. L. Rev. 339, 374 (1959); *Steuer* v. *Steuer* (1905), 8 C. C. (N. S.) 71, 18 C. D. 145; *Krum* v. *Cuneo* (1943), 71 Ohio App. 521. The same thing is true where A is given the use of the property with power to dispose of it, plus a gift over. *Murphy* v. *Widows' Home and Asylum* (1925), 21 Ohio App. 174; *Routzong* v. *Minsterman* (1952), 94 Ohio App. 281.

Even though a devise to A does not contain language limiting the estate to A's life or to his use, the result is the same

if the devise contains powers of disposition plus a gift over of what remains at A.'s death. *Baxter* v. *Bowyer* (1869), 19 Ohio St. 490; *Johnson* v. *Johnson* (1894), 51 Ohio St. 446; *Tax Commission* v. *Oswald* (1923), 109 Ohio St. 36; *In re Shira* (Prob. Ct. 1959), 82 Ohio Law Abs. 307.

From the authorities cited and the wording of the will, it is apparent that Mrs. Irma A. Bowman, the widow, received a life estate in the testator's property, with power to sell and consume any or all of the corpus, if needed, in her discretion, for her support and comfort.

Although plaintiff asks for a construction of items 4(3) and 4(4), I have decided that it would be premature to attempt to construe them at the present time.

Item 4 provides for the disposition of "the rest, residue and remainder" of testator's property after the death of his wife. This undoubtedly refers to whatever property has been unconsumed by the wife under her power. Item 4(3) makes a bequest of "all personal property of whatever kind and description." Item 4(4) makes a bequest of "cash on hand." Some difficulties might arise in drawing the line between cash on hand and other personal property. On the other hand, the wife may have consumed all the property, or what is left may be so clearly under item 4(3) or 4(4) as to present no problem. Until Mrs. Irma Bowman's death, no issue arises under these clauses, and it is not the proper function of a court to pose and answer a series of hypothetical questions based on the various possibilities that might occur.

Construction of items 4(3) and 4(4) is thus not "ripe" for decision. The authorities dealing with "ripeness" are legion. In the last analysis, the matter is one for the court's discretion. See Borchard, Declaratory Judgments, Secs. 702 *et seq.* (2d ed. 1941); 4 Bowe-Parker, Page on Wills, Sections 31.1, 31.2, 31.3 (1961); 174 A. L. R. 880, at 882, 886; *Neville* v. *Carlet* (1905); 16 C. C. (N. S.) 544; *Snyder* v. *Heffner* (1929), 33 Ohio App. 379.

In order that there may be no misunderstanding, it should be noted that Mr. Bowman left no insurance payable to the estate. His life insurance policies were payable to a named beneficiary, and the proceeds are no part of his estate. Consequently, my remarks and decision with reference to item 4(4) have

nothing whatsoever to do with that part of the item bequeathing the "proceeds from insurance policies." Since there are no such proceeds in the estate, the testator's attempt to bequeath them is of no effect.

### Conclusions of Law

1. Item 2 of the will is inoperative and of no effect, and no property passes under it.

2. All of the testator's property remaining after the payment of debts and other obligations goes to the widow, Mrs. Irma A. Bowman. She has a life estate in such property, and may use the entire net income for her support and comfort as long as she lives.

3. If the net income is insufficient for her support and comfort, she may, in the exercise of her own discretion, use and consume so much of the principal as may be needed for her support and comfort. This power includes the right to sell principal and use and consume the proceeds. All the principal may be consumed if necessary.

4. Item 4 is intended to dispose of what remains unconsumed at the time of Mrs. Irma A. Bowman's death.

5. Construction of items 4(3) and 4(4) at this time would be premature and will not be undertaken.

*Judgment accordingly.*