**MAURY E. BETTIS COMPANY, a corporation, Respondent,**

v.

**KANSAS CITY, Missouri, Appellant.**

No. 25649.

Missouri Court of Appeals,
Kansas City District.

Dec. 4, 1972.

Aaron A. Wilson, City Counselor, and George L. DeBitetto, Associate City Counselor, Kansas City, for appellant.

Kenneth E. Arnold, Kansas City, for respondent.

Before SHANGLER, C. J., and CROSS, SWOFFORD, WASSERSTROM, PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

In its petition for declaratory judgment, respondent asked that its rights under the occupation licensing ordinance of Kansas

City, Missouri, be declared; that the court declare the ordinance illegal and void; and that the City be enjoined and restrained from arresting the plaintiff, or its president for failure to obtain an occupation license.

The City's position is that its Section 30.1690, Article II, Chapter 30, Revised Ordinances, 1956, applies to respondent as a "Manufacturer's Agent, Agency or Broker." The trial court held "That much of plaintiff's income arises from transactions beyond the State of Missouri and that the nature of plaintiff's business is such that it does not clearly fall within the specific definitions of defendant's licensing ordinances, other than the general ordinance No. 30.350, which provides: 'Agent or agency of any kind or character not otherwise specified herein, per year, $62.50.'" It was further found that respondent, during the years in question, 1957 to 1961, inclusive, represented various nonresident companies in a limited capacity and recognized some obligation to pay a license fee to the City, which it had done and was therefore not subject to penalties. Judgment was entered for each of the years for the difference between the amounts paid by respondent and the amounts specified under Ordinance No. 30.350, with interest at 6% from the dates due. The City appeals contending that (I) the evidence clearly reflects that respondent was a "Manufacturing Agent" under Ordinance No. 30.1690; (II) there was no substantial evidence that much of respondent's income arose from transactions beyond this state, and that the burden of proof on this issue was upon respondent and it failed to sustain such burden; and (III) that the court erred when it took judicial notice of Ordinance No. 30.350 which was not introduced into evidence.

Mr. A. J. Robles, who was employed in the City's Revenue Department, made an audit of respondent's books for the City for the license years, 1957 through 1961. By excluding respondent's St. Louis office and other offices, the commissions received by it were allocated to those attributable to the Kansas City area by Mr. Robles. Respondent's books clearly set out the St. Louis and Kansas City areas. Also excluded were the outside-of-Missouri sales. "The only thing that is attributable to the license fee is those activities where the goods were delivered in the State of Missouri at the initiation of the Kansas City area office." According to the compilation made from respondent's books, as shown by Defendant's Exhibit 6, the net commissions earned by respondent (and initiated in the Kansas City area office) are these: 1956, $23,377.26; 1957, $22,174.26; 1958, $16,329.10; 1959, $19,454.58; and 1960, $19,528.79. These figures, used as a license basis (under Section 30.1690), resulted in deficiencies as follows: 1957, $175.-00, penalty $37.50; 1958, $150.00, penalty $37.50; 1959, $150.00, penalty $37.50; 1960, $150.00, penalty $37.50; and 1961, $150.00, penalty $37.50. The total for these years claimed by the City to be due is $775.00 deficiencies and $193.75 penalties.

The evidence as to the manner in which respondent earned its commissions in its Kansas City office is this: Maury E. Bettis, respondent's president, testified that it is a manufacturer's representative, representing primarily electronic manufacturers throughout the country, except in this state. He denominated his company as being a manufacturer's representative rather than a manufacturer's agent, and distinguished the latter as being a particular planned sales philosophy of his marketing manager, being able to accept orders from his factory or principal, and to determine price. "A manufacturer's representative is given a price sheet, he is given a sales promotion plan, a philosophy of sales, a product. He is asked to survey his industry for sales of a particular product that may be under development or not completely at the moment developed." All the agreements state that there is not an order until it is accepted by the manufacturer. Respondent had offices in St. Louis, Wichita and Kansas City, which is headquarters,

and there had been as many as six people in its employment. Four and one-half states were covered: Missouri, Iowa, Kansas, Nebraska and southern Illinois. No inventory of products was had, and no delivery or physical possession of goods sold by respondent was had. The orders obtained would go in to the nonresident manufacturer who would then ship to whoever bought them. From 1957 to 1962, 75% of respondent's business was on sales outside Missouri, and approximately 25% was within this state. Less than 10% was within the limits of Kansas City. An audit was made of respondent's books for the western half of Missouri on Mr. Maury's insistence: "Well, we complained about having an office in St. Louis and then if we decided to open up an office in Springfield, what would happen to us. St. Louis has the same kind of an ordinance that we have. Then at a later date Mr. Robles came back and we split the state down the middle from Jefferson City where our sales were operated out of the Kansas City office." On cross-examination it was elicited from Mr. Bettis that respondent did not sell any merchandise of its own, and it was always selling someone else's merchandise, never holding title to it, and for the sales what respondent gets is a commission. An order is only acceptable by the factory. Respondent did not ship anything in interstate commerce. No billings were made from the Kansas City office, but it got copies of invoices on billings from the manufacturer's plant. There were four salesmen at the Kansas City office, including Mr. Bettis, for the license years in question. On advice of counsel, respondent paid the license tax under "manufacturer's agent classification" for many years. It did keep records, copies of commissions and sales records.

Respondent argues that Section 71.610, RSMo 1969, V.A.M.S., denying power to municipalities to impose a license tax on any business, avocation, pursuit or calling, unless such is specially named as taxable in the charter of the municipality, or unless such power be conferred by statute, controls the City's power to license it because the business of "Sales Agent" or the business of "Manufacturer's Agent, Agency or Broker" is not specifically named in its charter. The argument is untenable because respondent's activities, whether it be technically termed a "manufacturer's agent" or a "manufacturer's representative" (as it contends it is) is that of a *commission agent* which is specifically named, albeit with some 800 other specific occupations, in Section 1, paragraph (57) of the City's charter. On behalf of the Bettis Company, Mr. Bettis admitted that what the company receives as compensation is a commission upon the sales procured by it in representing various electronic product manufacturers in promoting their products. In that capacity, having no physical inventory and not handling any products in transit, as the evidence shows, respondent is clearly an agent. "Commission" in the context presented is defined as: "6: a fee paid to an *agent* or employee for transacting a piece of business or performing a service (a broker receives a [commission] on each share of stock bought for a customer) (a [commission] of 50 cents for each car washed); esp: a percentage of the money received in a sale or other transaction paid to the *agent* responsible for the business." Webster's Third New International Dictionary, p. 457. (Emphasis added.) In Leibold v. Brown, 260 Ala. 354, 71 So.2d 7, appellant described himself as "what is commonly known as a manufacturer's agent" under pleaded facts showing that the nature of the business was very much the same as that described by Mr. Bettis here. In Sunset Milling & Grain Co. v. Anderson, 39 Cal.2d 773, 778, 249 P.2d 24, 27 [5], Sunset Milling sought to avoid the effect of an instrument in writing on the ground that it was signed as "representative" rather than as "agent". The court said, "This attempted distinction is without merit because, for all general purposes, the designations are synonymous. Webster's New International Dictionary, 2d Ed., 'Agent'. 'An agent is

one who represents another, called the principal, in dealings with third persons. Such representation is called agency.' * * * The terms may be used interchangeably. Texas Power & Light Co. v. Adamson, Tex.Civ.App., 203 S.W.2d 275, 276." See also Valentine Oil Co. et al. v. Powers et al., 157 Neb. 87, 59 N.W.2d 160; Bowman v. Bowman, 3 Ohio Misc. 161, 210 N.E.2d 920, holding that a deceased "manufacturer's representative" was in legal effect an agent or broker, and as such his business could not be transferred by will; and generally, 2A Words and Phrases p. 570; and 37 Words and Phrases p. 63. Respondent's cited cases of Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415, 417 (where the City's charter did not specifically empower it to tax the occupation of architect); and Moots v. City of Trenton, 358 Mo. 273, 214 S.W.2d 31 (imposing a license tax on music machines not mentioned in the licensing authority), and other cases, are not in point in that they did not employ a generic term such as here used in the City's charter: "Commission agent" which is above held to be synonymous with the words used in the ordinance, "Manufacturer's Agent," and with respondent's terminology, "Manufacturer's Representative."

In this case, in accordance with the above discussion, respondent clearly comes within the City's occupation tax authority as a "commission agent" under its charter, and as such commission agent respondent comes within the ambit of Ordinance Section 30.1690, supra, as a related "Manufacturer's Agent, Agency or Broker" despite its attempt tenuously to make an exclusionary distinction between and among those terms. Clearly the evidence shows that respondent's earnings were allocated and attributable to its Kansas City office, and as such had a sufficient "nexus" with the City as to be a legitimate basis for the license tax. Cf. City of Kansas City, Missouri v. Graybar Electric Company, Inc., Banc Mo., 485 S.W.2d 38. There is thus no necessity to pursue the City's claim that

there was no evidence to sustain the court's finding that much of respondent's income arose from transactions beyond this state, or that the court erred in taking judicial notice of Ordinance No. 30.350, in imposing a lesser license tax under its catch-all provisions than that due under the evidence.

The judgment is reversed with directions to the trial court to enter judgment in the amount of $968.75 for appellant city.

All concur.