T.C. Memo. 1997-211


UNITED STATES TAX COURT


SHARON E. BACKSTROM, HAROLD J. and ZELMA G. BARBRET, VIRGINIA
BOLAND, JOHN A. and THERESA A. CISLAGHI, ESTATE OF ROGER W.
DORNBROCK, DECEASED, MARYN J. DORNBROCK, PERSONAL REPRESENTATIVE,
MARYN J. DORNBROCK, GARY E. and BEVERLY G. ENGEL, HERMANN K. and
HELEN W. ENZMANN, DON and MARY EVERETT, KENNETH B. and MARY J.
FAUST, ESTATE OF HAROLD E. FRAZER, DECEASED, ELIZABETH FRAZER,
PERSONAL REPRESENTATIVE, CHARLOTTE V. FRAZER, WILLIAM M. and
MARTHA J. GOODMAN, PAUL W. and KATHLEEN M. HAMMER, JOHN and RITA
C. HARVEY, WILLIAM R. and ETHEL KELLEY, EDWARD and ARLES
KOGELMAN, TERRENCE L. LABADIE, FRANCES ENG LEE, GEORGE R.
MARTELL, CRAIG A. and CYNTHIA M. PELTIER, MYRA JOAN RODGERS,
WILLIAM H. and SHIRLEY M. SHAW, KARL L. and SUI TI A. SIEBERT,
JOHN M. and SANDRA SOPER, PAUL J. and NANCY L. SPINDLER, GERARD
W. J. and MADELINE TREMBLAY, RICHARD R. and MONICA J. RIDDLE,
CAROL T. JAKUBOWSKI, and ARTHUR MILLER  Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5904-88.                    Filed May 6, 1997.


<u>Andrew W. Mychalowych</u>, for petitioners Maryn J. Dornbrock
and the Estate of Roger W. Dornbrock, Deceased.

Karen J. Goheen, for respondent.

MEMORANDUM OPINION

DAWSON, Judge: This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(4)and Rules 180, 181, and 183.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, Special Trial Judge:  Petitioner Maryn J. Dornbrock (Mrs. Dornbrock) has before the Court a motion for leave to file a motion to vacate or revise the decision that was entered in this case.[2]  This case is one of a group of cases that constituted a national litigation project identified by respondent as "IG-Phonomasters" and involved investors in a master recording leasing program.  A joint petition was filed in this case on July 11, 1985, on behalf of numerous investors in this program, which included Roger W. Dornbrock and his wife,

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  As discussed later in greater detail, this motion was filed by petitioner, Maryn J. Dornbrock, individually on her own behalf, and on behalf of the Estate of Roger W. Dornbrock, Deceased, in her capacity as personal representative of such estate.

Maryn J. Dornbrock.  The decision is a stipulated decision, signed by counsel for the parties, and was entered by the Court on December 23, 1993.  Mrs. Dornbrock's motion for leave to file the motion to vacate or revise the decision was filed on April 15, 1996, over 2 years after the decision was entered.  No other motions, such as a motion to vacate, or a notice of appeal, have ever been filed in this case.  Concurrent with Mrs. Dornbrock's motion for leave to file is a motion to vacate or revise, which has been lodged with the Court.  Mrs. Dornbrock's motion for leave to file was calendared for hearing and was heard at this Court's Detroit, Michigan, trial session at which evidence was adduced.[3]

This case arises out of Roger W. Dornbrock's (Mr. Dornbrock) participation in a 1981 master recording leasing program known as the Pop Phonomasters Leasing Program (Pop Phonomasters program).  Mr. Dornbrock participated in the leasing program in 1981 by signing an "Offer to Participate in the Co-tenancy and Operating Agreement and Phonomasters Lease" (Offer).  Mr. and Mrs.

---

[3]     Under the circumstances herein, the motion for leave to file the motion to vacate or revise is a prerequisite to filing the motion to vacate or revise.  In deciding whether to grant or deny a motion for leave to file a motion to vacate or revise, the Court may consider the merits of the underlying motion to vacate or revise to determine whether further proceedings are appropriate. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999 (1978).  Accordingly, the Court here considers the merits of Mrs. Dornbrock's motion to vacate or revise, even though the motion before the Court is a motion for leave to file the motion to vacate or revise.

Dornbrock claimed a Schedule E partnership loss and an investment tax credit on their joint 1981 Federal income tax return from the Pop Phonomasters program.  They also filed amended joint Federal income tax returns for 1978, 1979, and 1980, claiming investment tax credit carrybacks for those years arising out of the Pop Phonomasters program.  The investment tax credits resulted in Federal income tax refunds for each of these years.  On April 12, 1985, a notice of deficiency was issued to Roger W. Dornbrock and Maryn J. Dornbrock, husband and wife, for all years involving the Pop Phonomasters program.  In the notice of deficiency, respondent determined the following deficiencies in Federal income taxes and additions to tax:

|        |            | Additions to Tax | |
|        |            | Sec. | Sec. |
| Year   | Deficiency | 6653(a) | 6659 |
| 1978   | $3,273.50  | $163.68 | $982.05 |
| 1979   | 9,818.00   | 490.90  | 2,945.40 |
| 1980   | 3,081.00   | 154.05  | 924.30 |

These deficiencies arose solely from Roger W. Dornbrock's participation in the Pop Phonomasters program.[4]

On July 11, 1985, a joint petition was filed on behalf of approximately 35 petitioners who received notices of deficiency as a result of their participation in the Pop Phonomasters

---

[4]    Although adjustments were made in the notice of deficiency to the Dornbrocks' income for 1981, no deficiency was determined for that year.

program, including Mr. and Mrs. Dornbrock.[5]  The timely petition in this case was filed on behalf of petitioners by Hallison H. Young (Mr. Young), an attorney who is admitted to practice before this Court.[6]  At the time the petition was filed, Mr. and Mrs. Dornbrock were legal residents of the State of Michigan.  On July 19, 1987, Mr. Dornbrock died, and Mrs. Dornbrock was subsequently appointed as personal representative of his estate by the Probate Court of Wayne County, Michigan.  At the time the subject motion was filed, Mrs. Dornbrock continued to be a legal resident of the State of Michigan.

Due to the large number of participants in the Pop Phonomasters program who had filed the joint petition, several petitioners representing various versions of the program were selected as "lead cases" that were tried first, and the remainder of petitioners were severed from the lead cases and assigned a separate docket number (i.e., this case).  The Court then continued this case pending the outcome of the lead cases.  Roger W. Dornbrock and Maryn J. Dornbrock were among petitioners who

---

[5]    For purposes of simplicity in numbers, the Court counts husbands and wives who filed joint returns and received joint notices of deficiency as "one" petitioner.

[6]    The petition was signed by Mr. Young as counsel for petitioners.  A petition in the Tax Court need not be signed by the taxpayers and may be signed by their counsel.  Rules 23(a)(3), 24(a).

were severed from the lead cases and assigned to this case.  In due course, a notice was issued calendaring this case for trial.

The lead cases in the program that were tried were decided by this Court in Donahue v. Commissioner, T.C. Memo. 1991-181, affd. without published opinion 959 F.2d 234 (6th Cir. 1992), affd. sub nom. Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993).  In Donahue v. Commissioner, supra, this Court found that the Pop Phonomasters program lacked economic substance.  The decision in the Donahue case was affirmed in the two cited appeals.  Subsequent to the conclusion of the final appeal in the Donahue case and the expiration of time for filing a petition for certiorari with the U.S. Supreme Court, counsel for the parties in this case, which included the Dornbrocks, entered into a stipulated decision with respect to the Pop Phonomasters issues based on the decisions in the Donahue case.

In the stipulated decision entered in this case, the parties agreed to deficiencies in Federal income taxes and additions to tax with regard to Mr. and Mrs. Dornbrock in the amounts set out in the notice of deficiency.  The stipulated decision document was lodged with the Court when the case was called for trial on November 1, 1993, and the decision was entered by the Court on December 23, 1993.  Concurrent with the filing of the stipulation, the parties filed a Motion to Substitute Parties and to Change Caption with respect to petitioner Roger W. Dornbrock,

who passed away in July 1987. Pursuant to Rule 63(a), this Court ordered that "Estate of Roger W. Dornbrock, Deceased, Maryn J. Dornbrock, Personal Representative" be substituted for "Roger W. Dornbrock" as a petitioner in this case.

Throughout the entire process just described, the attorney, Mr. Young, represented the taxpayers in the lead cases that were tried, and he continued as attorney for the taxpayers in this case, which had been severed from the lead cases. Mr. Young was in direct contact with only one of the program participants, Frank C. Pasternak (Mr. Pasternak). Mr. Pasternak was a certified public accountant whose clients included one of the organizers of the Pop Phonomasters program. Mr. Pasternak had accepted the responsibility of acting as "Co-tenancy Operator" (CTO) for the Pop Phonomasters program. By signing the aforementioned Offer, each Pop Phonomasters participant, including Mr. Dornbrock, appointed Mr. Pasternak as his or her attorney in fact and authorized him to execute, on behalf of each participant, the Co-tenancy and Operating Agreement, the Phonomasters Lease Agreement, and the Phonomasters Marketing Agency Agreement. Each participant also authorized Mr. Pasternak to execute any documents required under section 48(d) and section 1.48-4(g), Income Tax Regs., to pass through investment tax credits from the lessor to the lessees. In his capacity as CTO, Mr. Pasternak was given, subject to the other participants'

instructions, the exclusive right and duty to conduct the operations of the Pop Phonomasters program. More specifically, Mr. Pasternak was authorized to maintain books and records and to pay all ordinary and necessary expenditures without consulting other participants.

As Pop Phonomasters participants began receiving notices of deficiency regarding their investments, some of them contacted Mr. Pasternak about the matter. In response to their inquiries, and in his capacity as CTO, Mr. Pasternak mailed a form letter to each of the Pop Phonomasters participants regarding the notices of deficiency received by them. The form letter was drafted by Mr. Young's law firm; however, the letters were signed by Mr. Pasternak and were printed on "Phonorecords Phonomaster Leasing" letterhead and stated:

> Dear Co-tenant:
>
> As you are aware, the Internal Revenue Service has been conducting an investigation into the tax liabilities of certain co-tenants participation in ___Pop___ Phonomaster Leasing Program. We were recently informed that certain co-tenants have received Statutory Notices of Deficiency.
>
> It appears that certain of these investigations by the IRS involve substantial and controlling common questions of law or fact.
>
> Accordingly, if you wish to join in a consolidated effort (joint Tax Court Petition) return an _executed_ copy of the enclosed Consent Form by June 24, 1985 since your petition will very probably have to be filed with the United States Tax Court, Washington, D.C., by July 11, 1985.
>
> To help me and/or my representative prepare the petition, promptly deliver to me all available information

which substantiates all adjustments reflected on IRS Form
5278 Statement of Income Tax changes attached to your Notice
of Deficiency by June 24, 1985.

Thank you for your cooperation.

Very truly yours,

Frank Pasternak
Co-tenant Operator

The consent form attached to the letter read as follows:

The undersigned hereby desire(s) to contest the attached
Notice of Deficiency and authorize Frank Pasternak or his
representative to file a joint/consolidated petition with
the United States Tax Court for a redetermination of the
deficiency.

The undersigned hereby enclose(s) a copy of his/her
Statutory Notice of Deficiency.

Upon receiving signed consent forms from each of the Pop

Phonomasters participants, Mr. Pasternak forwarded the consent

forms and notices of deficiency to Mr. Young, the attorney.  The

participants who responded to the letter also made payments for

instituting litigation in this Court in the form of checks made

payable to Mr. Pasternak.  Mr. Pasternak, in turn, deposited the

checks into a bank account he held as agent for Pop Phonomasters

and then issued a check from such account to Mr. Young

representing total payment from all petitioners.

At the hearing on the subject motion, Mrs. Dornbrock

testified that, although she was not aware of the details

surrounding the Pop Phonomasters program, her husband had told

her about his investment in Pop Phonomasters and that she had

raised no objections. Further, she admitted that her husband had told her, prior to his death in 1987, that a tax problem had arisen with the investment.[7] He directed her to call Mr. Pasternak if she had any questions regarding the investment or the tax problems associated therewith. After her husband's death, Mrs. Dornbrock called Mr. Pasternak to inform him of her husband's death, but she did not discuss the Pop Phonomasters program with him.

After the stipulated decision in this case became final, the Internal Revenue Service (IRS) assessed the various deficiencies and additions to tax in accordance with the decision. In March 1994, Mrs. Dornbrock received a letter from the IRS informing her that she owed $17,267.81 for the tax year 1978. Believing that this amount represented all of her tax liabilities, she paid this amount in full. Shortly thereafter she received further correspondence from the IRS informing her that she owed $51,790.34 for 1979 and $15,043.26 for 1980. Upon receipt of the correspondence referencing 1979 and 1980, Mrs. Dornbrock sought the advice of a certified public accountant, who referred her to an attorney. This series of events gave rise to the motion filed on her behalf and that is presently before the Court.

---

[7] At this time, Mr. Dornbrock had become aware that he was terminally ill and was taking steps to prepare his wife to handle financial matters after he had passed away. His efforts included providing his wife with much financial information of which she had previously, by her own admission, been intentionally unaware.

In her motion for leave to file, in which Mrs. Dornbrock is represented by attorney Andrew W. Mychalowych (Mr. Mychalowych), she alleges "fraud on the Court" because Mr. Young lacked authority to represent her in this case.  In further filings, Mrs. Dornbrock alleges that this Court lacked jurisdiction over both her and the estate of her deceased husband.  At the hearing, Mrs. Dornbrock modified her position to contend that Mr. Young's lack of authority to represent her originated only at the time of her husband's death.[8]  She further alleges that any authority Mr. Young may have had to represent her husband terminated upon Mr. Dornbrock's death, and that Mr. Young had no authority to represent her as personal representative of her husband's estate. Mrs. Dornbrock asserts that Mr. Young had no authority to execute the stipulated decision document on her behalf and on behalf of the estate of her deceased husband, and, therefore, the decision should be vacated.  Respondent objects to petitioner's motion.

With regard to the argument that Mr. Young lacked authority to represent her, Mrs. Dornbrock contends that she had no

[8]  Mrs. Dornbrock's changed position appears to have resulted from the Court's observation that, if Mr. Young never had authority to represent her, this Court never had jurisdiction over her, and respondent would have been free to assess her for the amounts determined in the notice of deficiency.  This result would complicate the legal process in that presumably Mrs. Dornbrock would be required to continue the action in this Court for a determination that there was no jurisdiction and commence a separate legal proceeding in U.S. District Court for a refund. This latter proceeding, however, would require a prior payment in full of the assessments.

knowledge of this litigation and she did not personally authorize Mr. Young to represent her in this case. Mrs. Dornbrock contends further that, if Mr. Young had the authority to represent her in filing the joint petition, he was acting as her subagent (by and through her agent, Mr. Dornbrock) rather than as her agent. Accordingly, she argues that, under common law principles of agency, Mr. Young's status as subagent for her terminated upon the death of Mr. Dornbrock, her agent. Thus, Mrs. Dornbrock contends that Mr. Young's authority to represent her as a subagent terminated upon the death of her husband.

With regard to her argument that Mr. Young lacked authority to represent her husband's estate, Mrs. Dornbrock contends that, under Michigan law, Mr. Young's authority to represent Mr. Dornbrock terminated upon Mr. Dornbrock's death. She contends that Mr. Young never obtained her permission, as personal representative of her husband's estate, to substitute parties as he did in this case. She argues further that her husband's estate was closed in 1988; yet, the estate was not substituted as a party until 1993. Therefore, she contends, this Court never obtained jurisdiction over the estate of her deceased husband.[9]

---

[9] Mrs. Dornbrock's position on this argument is not clear as to whether the Court's purported loss of jurisdiction over her husband's estate reverted back to the date of the filing of the petition or the date her husband died.

In support of her motion, Mrs. Dornbrock asserts that she (1) had no specific knowledge of the tax deficiencies at issue herein, (2) did not sign the petition, (3) did not know Mr. Young, (4) did not personally authorize Mr. Young to file a petition on her behalf, (5) never received any communication from Mr. Young regarding this case, (6) never received a bill from Mr. Young for services rendered in this case, and (7) did not personally authorize Mr. Young to enter into a settlement agreement on her behalf or on behalf of her husband's estate.

Rule 162 provides that a motion to vacate shall be filed within 30 days after a decision has been entered, unless the Court shall otherwise permit. Sections 7481 and 7483 provide generally that a decision of this Court becomes final, in the absence of a timely filed notice of appeal, 90 days from the date the decision is entered. As a general rule, this Court is without jurisdiction to vacate a decision after the decision becomes final. Toscano v. Commissioner, 441 F.2d 930, 932 (9th Cir. 1971), vacating 52 T.C. 295 (1969). However, a decision entered in a case where this Court never acquired jurisdiction over a taxpayer is a legal nullity and is, therefore, not a decision as to that taxpayer. Billingsley v. Commissioner, 868 F.2d 1081, 1085 (9th Cir. 1989). Accordingly, a judgment void for lack of jurisdiction may be vacated at any time. Billingsley v. Commissioner, supra at 1084; Brannon's of Shawnee, Inc. v.

Commissioner, 71 T.C. 108, 111-112 (1978).  The Court may also

vacate a decision after the decision becomes final if there has

been a fraud on the Court.  Abatti v. Commissioner, 859 F.2d 115

(9th Cir. 1988), affg. 86 T.C. 1319 (1986); Senate Realty Corp.

v. Commissioner, 511 F.2d 929, 931 (2d Cir. 1975); Stickler v.

Commissioner, 464 F.2d 368, 370 (3d Cir. 1972).  Mrs. Dornbrock's

motion alleges lack of jurisdiction as well as fraud on the

Court.[10]

The jurisdiction of this Court is based on a timely filed

petition.  Levitt v. Commissioner, 97 T.C. 437, 441 (1991).  When

a taxpayer files a timely petition, this Court's jurisdiction is

invoked and remains unimpaired until the controversy is decided.

Dorl v. Commissioner, 57 T.C. 720, 722 (1972); Main-Hammond Land

Trust v. Commissioner, 17 T.C. 942, 956 (1951), affd. 200 F.2d

308 (6th Cir. 1952).  However, when an individual fails to sign

the petition or to ratify the petition and does not intend to

become a party to the litigation, this Court acquires no

jurisdiction over that individual.  Levitt v. Commissioner, supra

---

[10]    In Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955), the circuit to which this case would be appealed, the Court of Appeals for the Sixth Circuit indicated that the Tax Court also has the power in  its discretion, in extraordinary circumstances, to vacate and revise a final decision where it is based upon a mutual mistake of fact.  However, in Harbold v. Commissioner, 51 F.3d 618, 619 (6th Cir. 1995), the Sixth Circuit held that the case of Reo Motors, Inc. v. Commissioner, supra, is no longer binding in that circuit and the case is considered to have been overruled by Lasky v. Commissioner, 352 U.S. 1027 (1957).

at 441.  Ratification requires a showing of proper authorization by the signing party to act on behalf of the nonsigning party. Id.

When a petition is filed by an attorney on behalf of a taxpayer, the question is whether that taxpayer authorized the attorney to act on his or her behalf.  This is a factual question to be decided based on common law principles of agency.  Adams v. Commissioner, 85 T.C. 359, 369-372 (1985); Casey v. Commissioner, T.C. Memo. 1992-672.  Under common law rules of agency, authority may be granted by express statements or may be derived by implication from the principal's words or deeds.  John Arnold Executrak Sys., Inc. v. Commissioner, T.C. Memo. 1990-6 (citing 1 Restatement, Agency 2d, sec. 26 (1957)).

In Casey v. Commissioner, supra, this Court held that the taxpayer's practice of routinely allowing her spouse to handle income tax matters and to open correspondence received from the Commissioner constituted an implied grant of authority to her spouse that allowed him to represent her with respect to their joint income tax matters.  That grant of authority was sufficient to allow the taxpayer's spouse to hire an attorney to file a joint petition with this Court.  This Court held that it had jurisdiction over the taxpayer even though she never signed the petition because she impliedly authorized it through her spouse.

The record establishes that Mrs. Dornbrock habitually turned over the responsibility of dealing with the couple's business and financial matters, including their Federal income tax matters, to her husband. Mrs. Dornbrock trusted her husband completely and signed their joint Federal income tax returns without even reviewing them. Furthermore, Mrs. Dornbrock never opened any mail that appeared to be financially or tax related, even though it may have been addressed jointly to her and her husband. Mrs. Dornbrock was aware of correspondence received from the IRS; however, she allowed Mr. Dornbrock to deal with such matters without question. This conduct impliedly authorized Mr. Dornbrock to represent Mrs. Dornbrock with respect to their Federal income tax matters. Mr. Dornbrock acted within the scope of this authority when he retained Mr. Young, by and through Mr. Pasternak, to file a petition with this Court. Mr. Young acted pursuant to the authority granted to him by Mr. Dornbrock on Mr. and Mrs. Dornbrock's behalf when he filed the joint petition in this case. "Even if * * * [the taxpayer] was not aware of the dispute with the IRS, her own admitted delegation of authority to her husband cannot now be revoked because she is unhappy with the outcome of her case. 'Deficiencies ex post do not detract from authority ex ante.'" DiSanza v. Commissioner, T.C. Memo. 1993-142, affd. without published opinion 9 F.3d 1538 (2d Cir. 1993).

Mrs. Dornbrock, therefore, has not convinced this Court that it lacked jurisdiction over her in this case.

Mrs. Dornbrock further contends that this Court lacked jurisdiction over her husband's estate at the time the decision was entered. The petition was filed timely on July 11, 1985, and Mr. Dornbrock died in 1987 while this case was pending. Prior to entry of the decision, the Court ordered, pursuant to Rule 63(a), that the estate of her husband, through Mrs. Dornbrock as personal representative, be substituted as a petitioner in this case.

It is well settled that a petitioner's death does not divest this Court of jurisdiction over the income tax liability of such petitioner for years at issue. Nordstrom v. Commissioner, 50 T.C. 30 (1968); Yeoman v. Commissioner, 25 T.C. 589 (1955). This Court's jurisdiction is based on the petition, which here was timely filed on Mr. Dornbrock's behalf while he was alive and which he authorized. Sec. 6213(a); Rule 13. Once this Court has jurisdiction, the case does not abate upon petitioner's death. Duggan v. Commissioner, 18 B.T.A. 608 (1930).

When a petitioner dies, the Court generally will order that a representative or successor be substituted as the proper party. Rule 63(a). The legal capacity in this Court of a representative is controlled by Rule 60(c). This Court applies local law to determine who may represent the decedent's estate in this Court.

Fehrs v. Commissioner, 65 T.C. 346 (1975).  Under Michigan law,
"an estate is not a proper party to a lawsuit but rather the
administrator or executor is the proper party plaintiff or
defendant."  Wright v. Estate of Treichel, 36 Mich. App. 33, 35,
193 N.W.2d 394, 395 (1971); see also Cinnamon v. Abner A. Wolf,
Inc., 215 F. Supp. 833 (E.D. Mich. 1963) (stating that the death
of the plaintiff during the pendency of a private antitrust suit
in Federal court sitting in Michigan did not abate the action,
and the executor of the deceased plaintiff's estate could be
substituted as party plaintiff).  Mrs. Dornbrock was appointed
personal representative of her husband's estate by the Probate
Court of Wayne County, Michigan, which clearly qualifies her as
the proper party to continue the prosecution of Mr. Dornbrock's
action before this Court.  This Court ordered that Mr.
Dornbrock's estate and Mrs. Dornbrock, as personal representative
of that estate, be substituted for her deceased husband as a
petitioner in this case.  This substitution was in compliance
with both the rules of this Court and Michigan law.  Mrs.
Dornbrock, therefore, has not convinced this Court that we lack
jurisdiction over the estate of her deceased husband in this
case.

As was noted in Nordstrom v. Commissioner, supra at 32:

> The foregoing makes it clear that the Court's
> jurisdiction over a case continues unimpaired by the death
> of a petitioner and even * * * [in the event that] there is
> no personal representative appointed to act in the place and

stead of the decedent. And if our jurisdiction continues, then there must be a procedural means to bring the case to a close.

In the event that no representative of a decedent comes forward to prosecute the decedent's case before this Court, the procedural means for bringing the case to a close is respondent's filing of a motion to dismiss for failure to properly prosecute. Nordstrom v. Commissioner, supra; see also Wyler v. Commissioner, T.C. Memo. 1990-285. Consequently, if this Court were to hold that the aforementioned substitution of Mr. Dornbrock's estate and Mrs. Dornbrock as personal representative of that estate was improper, respondent would then be in the position to file a motion to dismiss this case as to Mr. Dornbrock for failure to properly prosecute. If this Court were to grant such a motion, Mrs. Dornbrock and the estate of her deceased husband would be in the same position she finds herself in at this time because respondent could assess the taxes based upon an order of dismissal and decision. This Court does not believe that Mrs. Dornbrock desires such an inevitable result in this case.

Mrs. Dornbrock contends that the substitution of parties in this matter was improper or invalid because her husband's estate had been closed some 5 years prior to the substitution. Her argument in this regard is misplaced. The Supreme Court of Michigan has held:

probate and closing of an estate should not bar an action that may yet, within the applicable statute of limitation,

be commenced directly against the personal representative of the decedent.  Just as the failure of heirs to probate a decedent's estate does not preclude the commencement of an action, neither should the closing of an estate preclude the commencement of an action which otherwise is authorized.

Williams v. Grossman, 409 Mich. 67, 83-84, 293 N.W.2d 315, 320

(1980). Furthermore:

Although the probate of an estate has been completed and the estate closed, where a person has an action which by statute may be commenced directly against the personal representative of the decedent without first filing a claim against his probate estate, the administration of the estate is "incomplete" within the meaning of the statute and upon petition the estate may be reopened to provide a suable person so that the action can be commenced. * * * [Fn. ref. omitted.]

Id. at 77-78, 293 N.W.2d at 317.  The Court believes that this rule is particularly applicable to this case since the proceeding in this Court commenced prior to Mr. Dornbrock's death and was still pending at the time of his death and throughout the administration of his estate.  "A presentation of a claim is not required in matters claimed in proceedings against the decedent that were pending at the time of death."  Mich. Comp. Laws Ann., sec. 700.712 (West 1995).  Moreover, "a judgment in a proceeding in another court against a personal representative to enforce a claim against a decedent's estate constitutes an allowance of the claim."  Id. sec. 700.717.  Mrs. Dornbrock failed to show that the closing of her husband's estate prior to the time of the substitution of parties in this case would have the effect of invalidating the substitution of parties.  What she has shown,

instead, is that she failed in her duties as personal representative of her husband's estate to fully administer the estate before petitioning the Probate Court to close the estate and discharge her as personal representative.

Since the Court concludes that the decision entered in this case was not void as to Mrs. Dornbrock and her husband's estate for lack of jurisdiction, the Court next addresses the contention that there was "fraud on the Court". This Court has jurisdiction to set aside a decision that has become final where there is a fraud on the Court. Senate Realty Corp. v. Commissioner, 511 F.2d 929 (2d Cir. 1975); Abatti v. Commissioner, 86 T.C. 1319 (1986), affd. 859 F.2d 115 (9th Cir. 1988). In order to succeed, Mrs. Dornbrock must establish that there was fraud on the Court in the entry of the decision on December 23, 1993, based on Mr. Young's alleged lack of authority to represent Mrs. Dornbrock and her husband's estate following the death of Mr. Dornbrock in July 1987. The burden of proof is on the party filing the motion to vacate, and such burden must be carried by clear and convincing evidence. Kraasch v. Commissioner, 70 T.C. 623, 626 (1978).

This Court, in Abatti v. Commissioner, 86 T.C. at 1325, has described the term "fraud on the Court" as follows:

> Fraud on the court is "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjud[g]ing cases that are presented for adjudication. Fraud, inter partes, without more, should not

be a fraud upon the court." <u>Toscano v. Commissioner</u>, 441
F.2d at 933, quoting 7 J. Moore, Federal Practice, par.
60.33 (2d ed. 1970). To prove such fraud, petitioners must
show that an intentional plan of deception designed to
improperly influence the Court in its decision has had such
an effect on the Court. * * *

The Court must examine all of the evidence in light of the
foregoing definition to determine whether the record establishes
fraud on the Court.

The first consideration is Mr. Young's purported
representation of all petitioners in the original joint petition.
The practice of a few attorneys, or even one attorney,
representing a large group of investors who were engaged in a
single transaction is commonplace and is not by its nature a
cause for suspicion. Also, it is not unusual in such
circumstances for such attorney or attorneys to have direct
contact with only a few, or even one, of the investors appointed
to represent the others. The practice of such attorney or
attorneys maintaining continuous and direct contact with each
individual investor could prove to be impractical,
overburdensome, and could cause severe delays in the litigation
of a case.

Next, it is necessary to consider Mr. Dornbrock's
authorization of Mr. Young to represent Mr. and Mrs. Dornbrock in
this case. Mr. Young testified that he would not have included
an individual's name on the original joint petition unless he had
received from the individual a consent form and a copy of their

notice of deficiency.[11]  Indeed, Mrs. Dornbrock failed to show how Mr. Young could have obtained the correct amounts of deficiencies and additions to tax, to include in the joint petition, unless her husband had indeed forwarded their notice of deficiency to Mr. Young through Mr. Pasternak.  On the entire record, this Court is convinced that Mr. Young was given the authority, by Mr. Dornbrock, to represent both Mr. and Mrs. Dornbrock in the filing of the joint petition in this case on their behalf.

The joint petition was timely filed and Mr. Young thereby became counsel of record for Mr. and Mrs. Dornbrock in this case. It is notable that the appearance of an attorney on behalf of an individual creates a presumption that the attorney has the authority to represent that individual. Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 830 (1824); Gray v. Commissioner, 73 T.C. 639, 646 (1980).  No motion to remove or cause the withdrawal of Mr. Young as counsel for Mr. Dornbrock, Mrs. Dornbrock, or Mr. Dornbrock's estate was filed until after Mrs. Dornbrock filed the subject motion seeking to vacate or revise the decision, nor, for that matter, have any of the other petitioners in this case filed any motion to remove Mr. Young or to vacate the decision entered against them.  Thus, it appears at

---

[11]    In fact, Mr. Young testified, and the record reflects, that he represented most, but not all, of the Pop Phonomasters investors.

first blush that on or about November 1, 1993, when Mr. Young and counsel for respondent signed the stipulated decision document, Mr. Young was duly authorized to represent Mrs. Dornbrock and the estate of her deceased husband. Moreover, the evidence is clear that neither Mr. Young nor counsel for respondent received any notice or had knowledge that Mr. Young no longer had the authority to represent Mrs. Dornbrock or her husband's estate.

Mrs. Dornbrock contends that Mr. Young represented her as a subagent, who had been appointed by and through her agent, Mr. Dornbrock. She alleges further that, under common law principles of agency, a subagency terminates upon the death of the agent. Therefore, she argues, Mr. Young's authority to represent her terminated with the death of her husband. In support of this proposition Mrs. Dornbrock cites several excerpts from the Restatement (Second) of Agency and a case decided in the Probate Court of Cuyahoga County, Ohio. See Bowman v. Bowman, 3 Ohio Misc. 161, 210 N.E.2d 920 (1965) (stating that the death of the agent terminates the authority of the subagent to act for the principal).

The Court agrees with the general proposition that, in a true subagency relationship, the death of the agent terminates the relationship between the principal and the subagent. Even if there was a subagency relationship that terminated upon the death of Mr. Dornbrock, Mrs. Dornbrock failed to show that Mr. Young's

continued representation of her subsequent to her husband's death amounted to fraud on the Court. Mr. Young was never notified that he was representing Mrs. Dornbrock as her subagent rather than as her agent; therefore, he could not have been expected to assume that the death of Mr. Dornbrock would terminate his authority to represent Mrs. Dornbrock. Mr. Young's continued representation of Mrs. Dornbrock was clearly in her best interest since she claims she had no knowledge of the proceedings and, therefore, would not have had the opportunity to appoint new counsel to represent her in this case. Mr. Young had a duty to represent Mrs. Dornbrock to the best of his ability until he was notified otherwise, a duty which he aptly fulfilled. On this record, the Court is satisfied that Mr. Young filed the petition as agent for both Mr. and Mrs. Dornbrock. There is no evidence to support the contention that Mr. Dornbrock employed Mr. Young to represent him alone and that Mr. Young represented Mrs. Dornbrock in a subagency capacity. There were some 35 husbands and wives who were joint petitioners in this case and to hold that, as to this one couple, Mr. and Mrs. Dornbrock, there was this special agent and subagent relationship, is simply incredible. The Court does not buy that argument.

Mrs. Dornbrock contends that, under Michigan law, an attorney-client relationship terminates upon the death of the client, and the authority of the attorney to represent the

deceased client is revoked. Therefore, she contends, Mr. Young's authority to represent her husband terminated upon Mr. Dornbrock's death. Mrs. Dornbrock's aforementioned statement of Michigan law is accurate. Indeed,

> The rule in Michigan is that the authority of an attorney is revoked and the attorney-client relationship is terminated when the client dies. Doty v. Dexter (1886), 61 Mich. 348, 28 N.W. 123; Courser v. Jackson (1909), 159 Mich. 119, 123 N.W. 604. See generally, 7 C.J.S. Attorney and Client § 113, p.945.

Wright v. Estate of Treichel, 36 Mich. App. at 36, 193 N.W.2d at 395 (1971); see also Henritzy v. General Electric Co., 182 Mich. App. 1, 451 N.W.2d 558 (1990). For purposes of this discussion, this Court assumes that Mr. Young's authority to represent Mr. Dornbrock terminated with his death in July 1987.

Nevertheless, Mrs. Dornbrock has failed to show that any of Mr. Young's actions subsequent to Mr. Dornbrock's death amounted to fraud on the Court. Mr. Young is an attorney; however, he does not possess the ability to read the minds of his clients. Mr. Young was notified of Mr. Dornbrock's death; however, he was not instructed to discontinue his representation of Mr. Dornbrock. When Mr. Young was made aware of the death of Mr. Dornbrock, he took the appropriate action of moving this Court to substitute parties, as provided for in Nordstrom v. Commissioner, 50 T.C. 30 (1968), to protect the interest of Mr. Dornbrock in this case. Mr. Young's substitution of parties, prior to signing the stipulated decision in this case, was in the best interest of

Mr. Dornbrock and his estate in the closing of this case. If Mr. Young had not pursued this course of action, which is explicitly prescribed for such situations by prior decisions of this Court, respondent would likely have properly filed a motion to dismiss for lack of prosecution as to Mr. Dornbrock. Mr. Young had a duty to represent Mr. Dornbrock to the best of his ability until he was notified otherwise. Mr. Young's actions in this case reflect a fulfillment of such duty rather than some type of sinister attempt to deceive this Court.

Mrs. Dornbrock's assertions that she could not have contacted Mr. Young regarding these matters because she had no knowledge of the Pop Phonomasters program or of the handling of any tax problems associated therewith carry very little weight with the Court. The evidence shows that Mrs. Dornbrock knew of the Pop Phonomasters program and was advised by her husband, prior to his death, of a potential tax problem with the investment. She was fully aware that Mr. Pasternak was the contact person for further information regarding such matters, and that any tax problem would be a joint liability of hers and Mr. Dornbrock's. Mrs. Dornbrock telephoned Mr. Pasternak to notify him of her husband's death. She had no other reason to contact Mr. Pasternak except for her husband's investment in the Pop Phonomasters program and to afford Mr. Pasternak the opportunity to act accordingly with respect to that program as it

was affected by her husband's death. Under these circumstances, Mrs. Dornbrock cannot now claim ignorance and expect this Court to vacate a final decision based on such claims. A taxpayer's lack of diligence does not amount to fraud on the Court.

Finally, Mrs. Dornbrock contends that, due to fraud on the Court, she was denied the right to assert the defense of "innocent spouse" under section 6013(e). The evidence does not show that any person gave Mr. Young any reason to believe that there was an innocent spouse issue in this case. Further, there is no reason to believe that such issue was not raised in the petition because of any collusion or fraud. Even if this Court were to conclude that Mrs. Dornbrock was entitled to innocent spouse relief, the decision should not be vacated because of the failure of Mr. Young to raise that issue. See Slavin v. Commissioner, 932 F.2d 598, 601 (7th Cir. 1991), revg. on another ground T.C. Memo. 1990-44, involving failure to raise an innocent spouse argument:

> There is no principle of effective assistance of counsel in civil cases. Shortcomings by counsel may be addressed in malpractice actions; they do not authorize the loser to litigate from scratch against the original adversary. [Citations omitted.]

The argument of innocent spouse relief for Mrs. Dornbrock may have been omitted through error or oversight or lack of communication or because counsel considered, correctly or incorrectly, that the argument was invalid, but the record here

does not establish that such argument was omitted for reasons amounting to fraud on the Court.[12]

There is no suggestion of fraud on the Court in Mr. Young's actions. Mr. Young, who testified at the hearing, admitted that he had never met Mr. and Mrs. Dornbrock or had any direct contact with them, nor did he have any direct contact with any of the Pop Phonomasters investors, except for Mr. Pasternak, and that it was understood that this was the manner in which the Pop Phonomasters litigation would be handled. If Mr. or Mrs. Dornbrock were not kept sufficiently informed about the progress of this case, that was a result of either their own inattentiveness or an inadvertent failure of communication on the part of Mr. Pasternak. However, as this Court stated in DiSanza v. Commissioner, T.C. Memo. 1993-142, affd. without published opinion 9 F.3d 1538 (2d Cir. 1993):

> even if we were to conclude that * * * [counsel] was negligent in this matter [his representation of the Dornbrocks], such conduct would not constitute fraud on the Court. See Kenner v. Commissioner, 387 F.2d 689, 692 (7th Cir. 1968), affg. an unreported order of this Court; see also Dominguez v. United States, 583 F.2d 615, 617 (2d Cir. 1978).

Moreover, even "Gross neglect on the part of a taxpayer's counsel does not constitute 'fraud on the Court'". Gazdak v.

---

[12] Mrs. Dornbrock's claim of innocent spouse is undermined by the fact that she paid in full, without question, the first bill she received from respondent after the decision was entered with respect to the 1978 tax year.

Commissioner, T.C. Memo. 1993-381; see also <u>Heim v. Commissioner</u>, 872 F.2d 245, 249 (8th Cir. 1989), affg. an order of the Court; <u>Toscano v. Commissioner</u>, 441 F.2d at 933; <u>Kenner v. Commissioner</u>, <u>supra</u> at 691-692; <u>DiSanza v. Commissioner</u>, <u>supra</u>; <u>Pulitzer v. Commissioner</u>, T.C. Memo. 1987-408.

The Court is satisfied that neither Mr. Young, Mr. Pasternak, nor any other party involved in the Pop Phonomasters litigation, made any deliberate attempt to deny Mr. or Mrs. Dornbrock or the Estate of Roger W. Dornbrock, deceased, Maryn J. Dornbrock, personal representative, their right to be heard by this Court. Mrs. Dornbrock has failed to show that any of Mr. Young's actions in this case involved the "evil intent, deceit or collusion which have marked those cases where final verdicts have been set aside." See <u>Senate Realty Corp. v. Commissioner</u>, 511 F.2d at 933. Mrs. Dornbrock has not convinced us that a fraud was perpetrated on this Court in the entry of the decision of this case on December 23, 1993, as to Maryn J. Dornbrock or the Estate of Roger W. Dornbrock, deceased, Maryn J. Dornbrock, personal representative. Therefore, Mrs. Dornbrock's motion for leave to file a motion to vacate or revise decision will be denied.

<u>An appropriate order</u>

<u>will be issued</u>.